2:06 CV229- WHA

# FORM FOR USE IN APPLICATIONS

## FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254

RECEIVED

CHARLES K. JOHNS
**Name**

2006 MAR 10  A 10: 25

AIS 154434
**Prison Number**

CLERK U.S. DISTRICT COURT

VENTRESS CORRECTIONAL FACILITY
**Place of Confinement**

United States District Court _____ MIDDLE _____ District of ALABAMA

Case No. _____
**(To be supplied by Clerk of U. S. District Court)**

CHARLES KELVIN JOHNS _____ , PETITIONER
**(Full Name)   (Include name under which you were convicted)**

J. C. GILES WARDEN _____ , RESPONDENT
**(Name of Warden, Superintendent, Jailor, or authorized person having custody of Petitioner)**

and

THE ATTORNEY GENERAL OF THE STATE OF _____ ALABAMA _____

_____ , ADDITIONAL RESPONDENT.

(if petitioner is attacking a judgement which imposed a sentence to be served in the _future_, petitioner must fill in the name of the state where the judgment was entered.  If petitioner has a sentence to be served in the _future_ under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly handwritten or typewritten and signed by the petitioner under penalty of perjury.  Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

N955

The Judicial Conference of the United States has adopted, effective 1/1/83, the 8½ x 11 inch paper size standard for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings, etc. filed after 12/31/82 must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(2) Additional pages are not permitted except with respect to the <u>facts</u> which you rely upon to support your grounds for relief.  No citation of authorities need be furnished.  If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed <u>in forma pauperis</u>, in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor.  If you wish to proceed <u>in forma pauperis</u>, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) Only judgments entered by one court may be challenged in a single petition.  If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(6) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of conviction.

(7) When the petition if fully completed, <u>the original and two copies * must be mailed to the Clerk of the United States District Court whose address is</u>:

P.O. Box 711
Montgomery, Alabama 36101

(8) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

*If you are proceeding <u>in forma pauperis</u>, only the original petition needs to be filed with the Court.

PETITION

1. Name and location of court which entered the judgment of conviction under attack _PIKE COUNTY CIRCUIT COURT  TROY ALABAMA_

2. Date of judgment of conviction _MARCH 13, 2003_

3. Length of sentence _LIFE_ Sentencing Judge _HEAD_

4. Nature of offense or offenses for which you were convicted: _____
_____ KIDNAPPING IN THE SECOND DEGREE _____
_____ CARRYING A CONCEALED WEAPON _____
_____

5. What was your plea?  (check one)
(a) Not guilty  ( ✓ )
(b) Guilty      ( )
(c) Nolo contendere  ( )
If you entered a guilty plea to one count or indictment, and a not guilty·
plea to another count or indictment, give details: _____
_____
_____
_____

6. Kind of trial:    (Check one)
(a) Jury  ( ✓ )
(b) Judge only  ( )

7. Did you testify at the trial?  Yes  ( ✓ )  No  ( )

8. Did you appeal from the judgment of conviction?    Yes  ( ✓ )  No  ( )

9. If you did appeal, answer the following:
(a) Name of court  ALABAMA COURT OF CRIMINAL APPEALS
(b) Result  AFFIRMED
(c) Date of result  JANUARY 23, 2004
If you filed a second appeal or filed a petition for certeorari in the Supreme
Court, give details: WRIT OF CERTEORARI DENIED MAY 14, 2004
_____
_____
_____

10. Other than a direct appeal from the judgment of conviction and sentence,
have you previously filed any petitions, applications, or motions with respect
to this judgment in any court, state or federal?  Yes  ( ✓ )  No  ( )

11. If your answer to 10 was "yes", give the following information:
(a) (1) Name of court  PIKE COUNTY CIRCUIT COURT
(2) Nature of proceeding  POST CONVICTION RELIEF

(3) Grounds raised  INEFFECTIVE ASSISTANCE OF COUNCIL /
THE COURT WAS WITHOUT JURISDICTION TO RENDER
THE JUDGMENT OR IMPOSE THE SENTENCE / VIOLATION
OF DUE PROCESS OF THE UNITED STATES CONSTITUTION
_____
_____

(4) Did you receive an evidentiary hearing on your petition, application
or motion?  Yes  ( )    No  ( ✓ )
(5) Result _____
(6) Date of result _____

(b) **As to any second petition, application or motion give the same information:**
    (1) Name of court _____
    (2) Nature of proceeding _____
    _____

    (3) Grounds raised _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )    No ( )
    (5) Result _____
    (6) Date of result _____

(c) **As to any third petition, application or motion, give the same information:**
    (1) Name of Court _____
    (2) Nature of proceeding _____

    (3) Grounds raised _____
    _____
    _____
    _____
    _____
    _____
    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?  Yes ( )    No ( )
    (5) Result _____
    (6) Date of result _____

(d) Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:
    (1) First petition, etc.       Yes ( )    No ( ✓ )
    (2) Second petition, etc.    Yes ( )    No ( )
    (3) Third petition, etc.     Yes ( )    No ( )

(e) If you did **not** appeal from the adverse action on any petition, application or motion, explain briefly why you did not: THE TRIAL COURT DENIED THE PETITION AND FAILED TO PROPERLY ADDRESS THE ISSUES BY ORDER THE PETITION WAS WITHOUT MERIT ON THE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNCIL AND THAT OTHER ISSUES WERE PRECLUDED UNDER RULE 32 PROCEEDINGS THEREFORE ANY FUTURE PROCEEDINGS IN ALABAMA STATE COURTS WOULD BE MEANINGLESS AND FUTILE

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest, [where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim].

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

**A. Ground one:** SEE ATTACHED GROUNDS ONE THRU SIX AND SUMMARY OF FACTS

**Supporting FACTS** (tell your story **briefly** without citing cases or law):

**B. Ground two:** SEE ATTACHED

**Supporting FACTS** (tell your story **briefly** without citing cases or law):

**C. Ground three:** SEE ATTACHED

**Supporting FACTS** (tell your story **briefly** without citing cases or law):

**D. Ground four:** _SEE ATTACHED_

**Supporting FACTS** **(tell your story briefly without citing cases or law):** .

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

14. Do you have any petition or appeal now pending in any court, wither state or federal, as to the judgment under attack?    Yes ( )  No ( )

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing _N/A_

    (b) At arraignment and plea _THOMAS K. BRANTLEY_

    (c) At trial _THOMAS K. BRANTLEY      DOTHAN ALABAMA_

    (d) At sentencing _THOMAS K. BRANTLEY_

    (e) On appeal _THOMAS K. BRANTLEY / WITHDREW ON APPEAL_
    _THOMAS H. CLAUNCH III   MONTGOMERY ALABAMA_

(f) In any post-conviction proceeding _____

(g) On appeal from any adverse ruling in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ( ✓ )    No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ( )    No ( ✓ )

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b) And give date and length of sentence to be served in the future: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ( )    No ( ✓ )

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.


_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on _March 8, 2006_____.
                                                                    (date)


_Charles K. Johns_____
Signature of Petitioner

## CASE SUMMARY AND SUPPORTING FACTS

Petitioner's problems concerning this case began by an attempt to have siding placed on his home that he had inherited from his father, Thomas King Johns, by succession. The siding company, which was based in California, before starting on the home, explained that the property could not be used as collateral because the property was not in the Petitioner's or his father's name. It was still listed as belonging to Sherman Johns and Henrietta Collier Johns, Petitioner's great grandparents.

The siding company further explained that the property would need to be transferred and probated to Petitioner before the initiation of remodeling of the home, which was built in 1900.

Petitioner immediately made a trip to consult Pike County Tax Assessor Curtis Blair, who advised a visit with Attorney Keith Watkins. Petitioner visited Mr. Watkins, who explained that the problem could be resolved with a quit claim deed for a fee of around two hundred fifty dollars ($250.00). The Petitioner agreed.

Mr. Watkins advised that all of Petitioner's brothers and sisters would need to agree and sign papers giving Petitioner sole ownership of the property. The family members agreed. Approximately two (2) weeks later the siding company initiated the remodeling of the house. At this time, the Petitioner did not suspect any discrepancies.

Approximately five (5) years later, Petitioner and his brothers and sisters agreed to have the property split into equal portions. At that time, they did not know the amount each would receive.

Petitioner visited Curtis Blair, Pike County Tax Assessor, to obtain a legal description of the Johns' property, to get an approximation of the amount of the split. Mr. Blair explained that under no circumstances would he supply a legal description of any of the property that belonged to the

Johns family.  An explanation was refused.

Petitioner continued to trouble Mr. Blair about this matter for about a year and also sought legal advice from surrounding counties about the matter.  Petitioner or any of the Tax Assessors from the surrounding counties did not feel that Mr. Blair was doing the right thing in this matter.  It would be part of his job and the property in question did belong to the Johns, who paid the taxes on the property.

M. Blair became aggravated with Petitioner's persistence and hastily advised him to consult with Probate Judge Bill Stone of Pike County.  Upon Petitioner's visit to consult with Judge Stone, he was also denied a legal description by the judge.  No explanation was given.  Petitioner continued to trouble Judge Stone about the matter, attempting to persuade him to change his mind.  Judge Stone advised the Petitioner to get an out-of-state attorney and he would then supply a legal description, and only then.

Mr. Stone finally advised Petitioner that Circuit Judge Robert Barr of Pike County had instructed him not to supply Petitioner with any information concerning his property or any property belonging to Petitioner's family.  No explanation was given.

Petitioner returned to see Attorney Keith Watkins about the matter in which Mr. Watkins explained that he did not wish to become involved.

Petitioner began attempting to research his deed at the Pike County Courthouse Records Department, on his own.  Petitioner could not properly do this on his own and no assistance was given even though he asked for help.

Upon a later visit, and there were many, Petitioner encountered Probate Judge Stone, who pointed Petitioner to a file which would lead to some very troubling and helpful information.  In this file Petitioner discovered that the Attorney General had filed a lawsuit against H.S. Barr and his unborn heirs.  Robert Barr, a circuit judge, is the heir to H.S. Barr.

-2-

Also, as Defendants in the lawsuit were J.T. Rammage and his unborn heirs. J.T. Rammage III is Brundidge, Alabama Mayor and is the heir to J.T. Rammage I. Other defendants were First Farmers and Merchants National Bank of Troy, now known as First National Bank of Brundidge.

The suit was filed on behalf of the Housing Authority, Board of Development, State of Alabama, and the City of Brundidge for illegal sales of property not belonging to any of the defendants. All of the property and estates were condemned by the State and were to be returned to the rightful owners or their estates. This has never taken place and Petitioner asserts criminal charges should have been filed but were not.

Petitioner obtained the services of Attorney Julian McPhillips to determine the amount of property the Johns family had inherited. Mr. McPhillips' fee was seven thousand five hundred dollars ($7500.00), to get a legal description, survey the property, and determine the amount and probate.

Mr. McPhillips employed the services of Cal Perkins to assist in the matter. Petitioner met with Mr. Perkins at the Pide County Courthouse and Mr. Perkins began to research the property and then explained to Petitioner that there was some type of illegal activity involving Petitioner's property and that Circuit Court Judge Robert Barr and Brundidge Mayor J. T. Rammage III were involved. But Mr. Perkins would not elaborate any further.

Neither Attorney Julian McPhillips or Cal Perkins fulfilled their original agreement concerning the Petitioner's property. Both Mr. McPhillips and Cal Perkins advised Petitioner to get an out-of-state attorney, and a very good one at that, because neither one wanted to get involved any further. No explanation was given. Petitioner requested a refund but none was given.

Petitioner became very frustrated with the problem because what should have been public record was not, what belongs to him and his family was denied to him, and Petitioner exhausted his resources in attorneys fees, to no avail.

Petitioner again began attempting to research his property in the records room of the Pike County Courthouse and after many, many visits discovered that the property inquestion and the home Petitioner's family resides in till current date actually belonged to his great great grandfather, G.C. Collier. He was a white plantation owner who owned a very large amount of real estate in and around Brundidge, Alabama. His sole heir was his daughter, a black woman, Henrietta Collier, Petitioner's great great grandmother. Henrietta Collier married Sherman Johns who had seven children by Henrietta Collier Johns. One of those children was C.W. Johns, the father of Thomas King Johns, Petitioner's father. The sole heir to C.W. Johns', Sherman and Henrietta Collier Johns by succession. In which makes Petitioner, his brothers and sisters, the rightful heirs to G.C. Collier by succession. Therefore, this entitles Petitioner to all their estates and properties that remain by succession.

In the quit claim deed provided to Petitioner by Attorney Keith Watkins Petitioner noticed that his property adjoined the property of his great grandmother, Henrietta Collier Johns. Petitioner is the rightful heir to this property but has been refused any information concerning this property.

There is clearly no dispute that Petitioner is the heir to the properties in question. But, Petitioner has been refused any information concerning the property other than that supplied by Attorney Keith Watkins. However, Petitioner asserts that his property remains unprobated due to the fact that the property was stolen from Petitioner's heirs by the heirs of Circuit Judge Robert barr and James T. Rammage III, the Brundidge, Alabama mayor.

Petitioner further asserts that the refusal to probate Petitioner's small portion of property is due to the fact that when probated the conspiracy will be revealed that Robert Barr and J.T. Rammage are to this current date profitting from the property stolen by their heirs from Petitioner' s heirs.

Petitioner never suspected but was informed before his trial that the property in question is approximately ten thousand (10,000) acres and can be revealed by the probate of any portion. Despite Petitioner's many attempts the property in question has never been probated.

The Petitioner became very stressed because of this conspiracy and denial to probate his property and called television stations in the area apprising them of what was going on concerning his property, in an attempt to get some light shed on the situation. None would listen.

Petitioner became very aggravated with the situation, lost control, and went to the Pike County Courthouse with his grandfather's gun to try getting some attention in the matter through publicity. Upon entering the courthouse Petitioner encountered Peggy Scott, who had known him since childhood. Mrs. Scott was a security officer at the courthouse.

Petitioner grabbed Mrs. Scott and asked her to go with him to the Probate Office and she complied. At the Probate Office, which was only a few feet away, Petitioner asked to speak to Probate Judge Stone and he appeared and spoke with the Petitioner briefly. Only a few minutes passed before Captain Doug Wheeler, a Pike County deputy, arrived on the scene, along with Sheriff Russell Thomas. They spoke with Petitioner very briefly about the situation and Petitioner placed his weapon on the floor and released Mrs. Scott.

The Petitioner was handcuffed and then taken to the Sheriff's Office where the sheriff called Petitioner's wife and summoned her to the sheriff's office.

Petitioner was transported to the Pike County Jail and later arraigned in Coffee County due to the State's knowledge that Petitioner could never receive a fair trial in Pike County. The State also attempted to have all proceedings removed from Pike County because of knowledge of the conspiracy

-5-

over Petitioner's property involving Circuit Judge Robert Barr.

Petitioner's wife employed the services of Attorney Thomas K. Brantly to represent Petitioner and upon initial consultation Petitioner was informed that he could never be convicted of the charged crime of First Degree Kidnapping.

Petitioner was later indicted for the charge of Kidnapping in the First Degree. Circuit Judge Robert Barr is the only judge who would sign the indictment for the charge, a severe conflict of interest on Judge Barr's part. This also poses a very real question of ethics by Judge Barr.

A jury was struck and Petitioner was convicted of Kidnapping in the Second Degree by a very questionable jury. Life imprisonment was imposed for a crime Petitioner is not guilty of, as the record will clearly reflect and now the Petitioner is unable to properly pursue his property rights therefore, is removed from the possiblity of bringing to light the conspiracy that has actually brought about this case.

### GROUND ONE

The Trial Court erred by admitting into evidence before the jury a statement alleging to be made by Petitioner in violation of the Constitution of the United States. For four (4) reasons:

(1) The Petitioner never made any type of statement, oral or written, and Petitioner asserts this alleged statement is fictious.

(2) The prosecution readily admits the statement was illicited by law enforcement before Petitioner was advised of the Constitutional right to an attorney or to remain silent.

(3) The prosecution failed to disclose to the defense before trial that Petitioner made any type of statement.

(4) The Trial Court failed to instruct the jury that the statement could not be used as evidence of Petitioner's guilt or intent but could be used to determine the credibility of Petitioner's testimony at trial only.

Petitioner's Entire strategy of defense was the truthfulness of himself acting out of character, under duress, and over the rightful heirship of property that Pike County officials refused to probate, "Probate Judge Bill Stone," "Circuit Court Judge Robert Barr," and "Brundidge Mayor Jam'e T. Ramage III."

By the trial court allowing this ficticious statement to be placed before the jury as evidence of Petitioner's guilt or intent caused severe prejudice to Petitioner's defense, and seemingly allowed Petitioner to give perjured testimony against himself.

This statement is the only evidence submitted to the jury upon which it could have been determined Petitioner had intent to cause harm to anyone. The victim, who was with the Petitioner for the duration of the event, and the State's number one witness stated to the jury that the Petitioner never made a threat to anyone, including "her the victim."

Therefore, when Sheriff Russell Thomas took the stand for the second time to rebut or impeach Petitioner's testimony with this fictitious, fabricated, statement that Petitioner had responded to a question that he had asked Charles Petitioner "Don't you regret the way you have handled this situation?" and the sheriff stated to the jury that Petitioner responded, "Hell no, I came to kill somebody."

Petitioner was handcuffed, in custody and inside the Sheriff's Department. However, had not been apprised of the constitutional right to an attorney or the right to refuse to answer questions concerning his arrest or the events leading up to his arrest.

The Sheriff Russell Thomas, Pike county's number one law enforcement agent should have known that the question could have elicited a response that could have been used against Petitioner at trial, and that such a line of questioning violates the United States Constitution.

-7-

However, Petitioner asserts this statement is in fact fictitious therefore could not have been discovered by Petitioner before trial. Petitioner cannot know of a statement he never made. Even though the statement was fictitious and the events leading up to the jury being allowed to hear the alleged statement was seemingly out of a script of the Matlock T.V. Series. The trial court failed to instruct the jury that the alleged statement could not be used to determine evidence of intent to do physical harm or as a threat to anyone by the Petitioner.

This statement was alleged to be made to the sheriff after the Petitioner's arrest and Petitioner was completely away from the scene of the crime and it's victim. Therefore, it had no bearing on whether the Petitioner threatened anyone on the scene of the crime.

The prosecution diligently worked to not only fabricate this statement but also to be sure that the jury could know of it, for two (2) reasons.

(1) There was no evidence presented at the close of the prosecution's case that would prove a threat was made; and

(2) The statement would plant the seed in the minds of the jurors that Petitioner did intend to harm someone to secure abduction coupled with intent of second degree kidnapping statute.

The defense filed for Motion of Discovery which was granted and the defense specifically requested the contents of any type of statements oral or written. The State responded and clearly stated that no statement was made oral or written.

The Prosecutor of this case clearly violated Petitioner's rights to a fair trial by not only not allowing the defense to know of this statement but by conspiring with the sheriff to fabricate a statement that Petitioner never made to get a conviction.

It should also be noted that the entire jury poop was made up of ex-law

-8-

enforcement family or friends of law enforcement or ex-law enforcement. This would naturally account for the jury to give far more credibility to the testimnoy of th'' sheriff than that of Petitioner and even further prejudicing Petitioner's credibility concerning this statement.

It certainly appears to Petitioner and the record does reflect that the circumstances in which this alleged statement was presented at trial was a decisive planned act rather than a search for truth in this criminal trial.

<u>GROUND TWO</u>

Petitioner was unconstitutionally indicted for a crime upon which the laws of the State of Alabama prohibit a conviction.

The indictment for First Degree Kidnapping could have only been obtained under false pretense, fictitious swearing, misreading of the statute of kidnapping in the First Degree or prosecutorial misconduct.

Each eyewitness of the crime testified that Petitioner released the victim alive, in a safe place, without serious physical injury, prior to apprehension.

The indictment could not have been obtained against Petitioner for First Degree Kidnapping by a grand jury absent some type of misconduct upon the prosecution.

The evidence at trial should have been the evidence the State used to obtain the indictment, however, could not have been, as the record clearly reflects and the jury confirmed at trial.

The trial court, at the close of evidence, stated that it was fully satisfied that the defense clearly interjected voluntary safe release of the victim by Petitioner. However, placed the charge of Kidnapping in the First Degree before the jury for an erroneous verdict.

Captain Doug Wheeler of the Pike County Sheriff's Department gave testimony that the prosecution actually knew before indictment, which was

-9-

that Petitioner had released the victim alive, in a safe place, without serious physical injury prior to apprehension. Captain Wheeler was involved in the arrest of Petitioner and the first law enforcement officer on the scene.

The prosecutor knew of this information from Captain Wheeler, however, chose to not take a practical common sense approach upon which to indict. Rather, chose to indict Petitioner for a crime in which the prosecutor knew or should have known that Petitioner could not be convicted.

It appears that the trial court impaneled the jury to define the word apprehension rather than apply its plain ordinary meaning, and apply the meaning in favor of the Defendant.

The question that the prosecution and court gave the jury to render a verdict on the Kidnapping in the First Degree charge was whether or not Petitioner had released the victim prior to apprehension. Voluntary safe release was completely satisfied by the defense, as confirmed by the court.

Section 13A-6-43, Code of Alabama, 1975, reads in pertinent part as follows:

(B) A person does not commit the crime of kidnapping in the first degree if he voluntarily releases the victim alive, and not suffering from serious physical injury, in a safe place prior to apprehension. The burden of interjecting voluntary safe release is on the Defendant, but does not shift the burden of proof.

The Legislature could not have contemplated the misuse of this statute by a prosecutor to knowingly abuse the ambiguousness of apprehension to prevent the lesser included offenses of kidnapping second degree. However, in this case the prosecution over indicted the Petitioner to prevent the trial court from giving the lesser charges associated with kidnapping in the second degree such as unlawful imprisonment in the first degree, reckless endangerment, or menacing.

The burden of interjecting voluntary safe release is on the Defendant however, prior to apprehension is not. Petitioner asserts that it would be impossible for anyone of common understanding to fail to actually believe from the victim's testimony as well as the may eyewitnesses testimony that Petitioner did not release the victim prior to apprehension.

Websters American Heritage Dictionary defines apprehension as follows: (1) A fearful or uneasy anticipation of the future; dread; (2) the act of seizing or capturing; arrest; (3) the ability to apprehend or understand; understanding.

Apprehend:  to take into custody; arrest; to mentally grasp; understand; to look forward to fearfully; anticipate with anxiety.

Therefore, by applying this plain ordinary definition the indictment could have never been obtained, and even though the prosecution did compel the court to make this statute of kidnapping in the first degree ambigious because of the definition of apprehension, the Legislature did not.

Therefore, the Court should not have allowed the charge of First Degree Kidnapping to go to the jury to decide the Legislature's intent or definition of apprehension. Rather the Court which was unsure of the definition or the Legislative intent should have defined apprehension in favor of the Petitioner but did not, which resulted in an unreasonable application of federal law, and Supreme Court precedent.

Petitioner was with the victim in the Probate Office of the Courthouse when law enforcement arrived on the scene. The Sheriff and deputy simply spoke to Petitioner briefly about the situation and Petitioner placed his weapon on the floor and released the victim. There was no promises made, no weapons drawn on Petitioner by law enforcement or threats made to him. Therefore, Petitioner was not in custody at the time he released the victim and this evidence is undisputable.

Therefore, by indicting Petitioner on Kidnapping in the first degree the prosecution insured that only kidnapping in the second degree would be given as lesser included offense. Rather than the possibility of an instruction to the jury for a crime in which the Petitioner was actually guilty of.

The record in this case clearly reflects that not only was the Petitioner not guilty of First Degree Kidnapping but also not guilty of Second Degree Kidnapping.

The crimes that Petitioner should have been charged with and indicted for are clearly as follows:

Title 13A-6-41.  UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE

(a) A person commits the crime of unlawful imprisonment in the first degree if he restrains another person under circumstances which expose the latter to a risk of serious physical injury.

(b) Unlawful imprisonment in the first degree is a Class A Misdemeanor.

Title 13A-6-23.  MENACING

(a) A person commits the crime of menacing if by physical action he intentionally places or attempts to place another person in fear of imminent serious physical injury.

(b) Menacing is a Class B Misdemeanor.

Title 13A-6-24.  RECKLESS ENDANGERMENT

(a) A person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.

(b) Reckless endangerment is a Class A Misdemeanor.

Petitioner further asserts the reasoning for the prosecution to have engaged in this conduct to charge and indict Petitioner for a crime in which he could not be convicted was to be sure that Petitioner would receive

-12-

maximum punishment in order to insure that Petitioner could no longer pursue the rightful heirship of property that has been stolen by the heirs of Circuit Judge Robert Barr and Brundidge, Alabama mayor James T. Rammage III. Both of these individuals are benefitting from the use of this property substantially until the current date. Circuit Judge Robert Barr is the only Judge who would sign the indictment against the Petitioner.

It should also be noted that the Trial Court stated on record that it intended to make an example of Petitioner. Life imprisonment was imposed. This resulted in a severe fundamental miscarriage of justice, for a crime the Petitioner did not commit.

Trial Attorney Brantly should have attacked the indictment before trial and on direct appeal but did not.

### GROUND THREE

The evidence do s not support the conviction of Kidnapping in the Second Degree.

For a conviction of kidnapping in the second degree to be obtained under Alabama law. A person must abduct another person and the abductor must intend to use or threaten to use deadly force upon the abductee or another person.

There was absolutely no evidence presented at trial to support a threat of deadly force or that Petitioner did intend to use deadly force. In fact, the evidence is to the contrary.

The evidence in this case was clearly an abduction, and Petitioner gave testimony at trial that he was the abductor. However, the abductor and no witness testified that a threat of deadly force was made or evidence that Petitioner intended to cause any type of harm to the abductee or anyone on or around the scene.

-13-

Petitioner entered the courthouse, grabbed the abductee, told her to walk with him to the Probate Office. No threat was made if the abductee failed to cooperate with Petitioner.

The only possible determination that the jury could have made that Petitioner could have intended to harm anyone was the fictitious statement that the sheriff claimed Petitioner made in direct response to a question after the entire incident was over and Petitioner was away from the scene or any potential victims.

However, the jury used this fictitious statement to determine that there was abduction coupled with intent to do serious physical injury as planned in the conspiratorial actions between the sheriff and the prosecutor to convict Petitioner by manipulation of the judicial process rather than the truth.

This issue should have been raised on direct appeal by counsel, but was not.

## COUNT FOUR

The trial court erred by refusing to give jury instructions on lesser included offenses associated with Kidnapping Second Degree.

13A-6-41 (1)  UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE

13A-6-24 (2)  RECKLESS ENDANGERMENT

13A-6-23 (3)  MENACING

Petitioner's actions concerning this conviction under the statutes of kidnapping are clearly unwarranted and clearly establish that Petitioner violated the statute of Unlawful Imprisonment, Reckless Endangerment, or Menacing.

Based upon reasonable theory and evidence Petitioner asserts that the jury would have found him guilty of one of these lesser crimes had the instructions been given in the jury charges.

-14-

This issue should have been raised on direct appeal but was not.

## GROUND FIVE

The Trial Court was without jurisdiction to render the judgment or impose the sentence.

Had the Trial Court given the proper jury charges in the lesser-included offenses that are associated with Kidnapping in the Second Degree Petitioner could have only been convicted of a misdemeanor crime punishable by up to one (1) year of incarceration. Therefore, Petitioner's actual sentence for the crime he actually committed should have long expired.

The evidence in this case clearly and convincingly supports a crime less than kidnapping as the record clearly reflects.

This issue should have been raised on direct appeal but was not.

## GROUND SIX

Ineffective Assistance of Counsel by Attorney Brantly at trial and on appeal.

Attorney Brantly failed to attack the indictment of First Degree Kidnapping before trial by filing a motion to dismiss the indictment.

Petitioner shows that if Attorney Brantly had filed for dismissal of the indictment of Kidnapping in the First Degree because the evidence was known before trial the indictment may have been dismissed and Petitioner then reindicted for a lesser crime in which Petitioner was possibly guilty of, and therefore, the conviction justified for the lesser crime or at the very minimum preserved the issue for appeal.

Attorney Brantly withdrew withdrew from representation in Petitioner's case after submitting the appellate brief to the Court of Criminal Appeals, and failing to attack obvious violations of state law as well as Petitioner's constitutional rights and clearly established Supreme Court precedent.

Attorney Brantly failed to attack on direct appeal the issue of Petitioner

-15-

not being Mirandized and the prosecution using the statement claimed to
have been made to the sheriff by Petitioner in response to improper quest-
ioning by the sheriff as to impeachment of the Petitioner's trial testimony
before the jury.

Attorney Brantly should have known to attack this issue because even
if this statement was made, and the Petitioner avers it was not, the statement
should not and could not have been used for any purpose whatsoever at trial.

This ineffectiveness by Attorney Brantly at trial and on direct appeal
has prejudiced Petitioner at every stage of his case and has caused him to
have a much more lengthy process of appeal. He has as well had to serve
a more lengthy sentence that the crime in which Petitioner actually committed
justified of one year incarceration.

### INEFFECTIVE ASSISTANCE OF COUNSEL BY ATTORNEY CLAUNCH ON APPEAL.

Attorney Claunch was appointed to represent Petitioner on direct appeal.
Due to Attornay Brantly's withdrawal after submission of the appellate brief.

Attorney Claunch simply submitted the brief as prepared by Attorney
Brantly on Petitioner's behalf. He did not identify or attack obvious violations
of Petitioner's constitutional rights, violations of state law, or well
established Supreme Court precedent.

Petitioner contacted Attorney Claunch by mail to confirm his view that
Attorney Brantley's brief was unsatisfactory and did not raise violations
that should have been raised.

Attornay Claunch simply contacted Petitioner by mail to acknowledge that
the brief would not be changed and was sufficient, in his opinion.

These inactions to properly identify and attack obvious violations of
state law/constitutional rights and well established Supreme Court precedent
on appeal by Attorney Claunch has prejudiced Petitioner in his appellate
process.

-16-

This ineffectiveness by both counsels, Brantly and Claunch, on direct appeal has caused Petitioner to file post-conviction remedies to the trial court issues that should have been raised on direct appeal, primarily those issues raised in this Habeaus Petition.

Petitioner's right to counsel is vacated under Rule 32 post-conviction remedy proceedings. Therefore, what should have been raised on direct appeal with assistance of counsel Petitioner has been forced to raise the issues without the benefit of counsel in post-conviction process, and Habeaus Petition. The trial court dismissed Petitioner's Rule 32 Petition for post-conviction relief.

Petitioner is very uneducated in the ways of the law and is a layman but has done his absolute best to properly raise said issues in the State court process, however, was denied by the trial court due to Petitioner's lack of understanding of procedure, and State court rules of Alabama's post-conviction process.

Therefore, Petitioner's rights to effective assistance of counsel have not been set forth by either Attorney Brantly or Attorney Claunch, causing very severe prejudice to Petitioner in his trial process, on appeal, and post-conviction remedy.

Attorney Brantly withdrew from Petitioner's appeal after submitting appellate brief citing conflict of interest, and Petitioner strenously asserts that conflict was due to fear of retaliatory measures associated with the public officials involved in a conspiracy to deny Petitioner his property that he is rightful heir to in Pike County, Alabama, rather any conflict with Petitioner or his criminal case.

-17-