Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555



H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

On Rehearing Ex Mero Motu

CR-02-1375                 Pike Circuit Court CC-02-96;CC-02-97

Charles Kelvin Johns v. State of Alabama

Cobb, Judge.

The memorandum issued on January 23, 2004, is withdrawn, and the following is substituted therefor.

After having been indicted for first-degree kidnapping, see § 13A-6-43(a)(2), Ala. Code 1975, and carrying a concealed weapon, Johns was convicted of second-degree kidnapping and carrying a concealed weapon, violations of §§ 13A-6-44 and 13A-11-50, Ala. Code 1975. On March 13, 2003, Johns was sentenced, has a habitual offender, to life in prison and to



6 months in jail, respectively.  See 13A-5-9(c)(2), Ala. Code 1975.  This appeal followed.

The facts adduced at trial indicate the following: On January 14, 2002, Johns, apparently disgruntled over the probate office's treatment of his real property, entered the Pike County Courthouse armed with a gun.  As he approached the metal detector, he jumped through it and grabbed Security Officer Peggy Scott around the neck.  Johns pointed the gun at her head and pulled her toward the office of the Probate Judge.  Officer Scott was unarmed.  Pike County Probate Judge Bill Stone heard shouting and stepped out of his office to investigate.  He saw Johns holding Officer Scott at gunpoint.  Judge Stone tried to convince Johns to drop the gun.  Deputy Sheriff Douglas Wheeler then appeared on the scene and convinced Johns to drop the gun.  Johns was placed in handcuffs and taken into custody by Sheriff Russell Thomas.  Johns was taken to the Sheriff's office where he and the Sheriff talked.

Johns's defense at trial centered around his assertions that he was "stressed out" and that he was very sorry the episode had occurred.  (R. 347.)

On appeal, Johns argues that the State failed to abide by Rule 16.1, Ala. R. Crim. P., when it did not provide to defense counsel the substance of Johns's oral statement made to the Sheriff after his arrest.  This failure, Johns contends, substantially prejudiced his defense and deprived him of a fair trial.

At trial, Johns testified that he had not intended to hurt anyone when he went down to the courthouse on the day in question.[1]  On cross-examination, over defense counsel's objection regarding the fact that Johns's alleged statement had never been provided to defense counsel, the prosecutor questioned Johns about whether he had stated to the Sheriff

---

[1] When Johns testified that he had not intended to hurt anyone, the prosecutor had one of his employees go out in the hallway to talk to the Sheriff.  Thus the prosecutor discovered that Johns had stated that he had gone to the courthouse that day to kill someone.

2

that he had told the Sheriff that he "came to kill somebody today." (R. 371.) Johns denied making the statement. The State recalled the Sheriff to the stand for rebuttal testimony. The Sheriff testified that Johns stated that he "came [to the courthouse] to kill somebody" on the day in question. (R. 398.)

Rule 16.1 states:

"Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown:

"(1) Permit the defendant to inspect and to copy any written or recorded statements made by the defendant to any law enforcement officer, official, or employee which are within the possession, custody, or control of the state/municipality, the existence of which is known to the prosecutor; and

"(2) Disclose the substance of any oral statements made by the defendant, before or after arrest, to any law enforcement officer, official, or employee which the state/municipality intends to offer in evidence at the trial."

Assuming, without deciding, that the prosecutor erred by failing to turn over to defense counsel the substance of Johns's statement to the Sheriff, this error was harmless. Johns was indicted for abducting Officer Scott "with the intent to use her as a shield or hostage...." (R. 49.) See § 3A-6-43(a)(2). Johns was ultimately convicted of second-degree kidnapping, which required proof only that he abducted Officer Scott. Johns admitted during his testimony that he was armed and that he "grabbed" Officer Scott and "carr[ied] her all the way into the probate judge's office." (R. 348.) Officer Scott testified that she was in fear for her life as Johns removed her from her seat, restrained her at gunpoint, and forced her to go to the probate judge's office. Other credible eyewitnesses, including the probate judge, confirmed Officer Scott's testimony that she was restrained by Johns

3

with his weapon and that she was forced to walk with him to the probate judge's office. Johns's testimony alone, but in particular combined with the testimony of Officer Scott and the other eyewitnesses, proved the State's prima facie case that he abducted Officer Scott. Even without the statement that Johns had gone to the courthouse in question to kill somebody, "the evidence overwhelmingly proved [Johns's] guilt...." Ex parte Hunter, 777 So. 2d 60, 61 (Ala. 2000).

> "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

Rule 45, Ala. R. App. Because of the existence of overwhelming evidence supporting the conviction for second-degree kidnapping, and because the statement in question did not serve to establish an element of the crime for which Johns had been indicted, the admission of the statement did not probably injuriously affect his substantial rights.[2]

For the reasons stated above, the judgment of the trial court is affirmed.

MEMORANDUM OF JANUARY 23, 2004, WITHDRAWN; MEMORANDUM SUBSTITUTED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.

McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.

---

[2]Although Johns was sentenced to the maximum conviction possible for a Class B felony with five prior convictions, see § 13A-5-9(c)(2), Ala. Code 1975, we note that the trial court stated that its reasons for sentencing Johns to the maximum were to set an example and to preserve the sanctity of the courthouse.