No. CR-02-1375

In the COURT of CRIMINAL APPEALS
of ALABAMA

CHARLES K. JOHNS,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

On Appeal from the Circuit Court of
Pike County (CC-2202-96 & 2002-97)

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

J. Thomas Leverette
*Assistant Attorney General*

Hense R. Ellis II
*Assistant Attorney General*
*Counsel of Record

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7300

October 9, 2003



## STATEMENT REGARDING ORAL ARGUMENT

The State of Alabama does not request oral argument.

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT............................. i

TABLE OF CONTENTS........................................... ii

TABLE OF AUTHORITIES....................................... iii

STATEMENT OF THE CASE........................................1

ISSUE PRESENTED FOR REVIEW ..................................2

STATEMENT OF THE FACTS.......................................8

STANDARD OF REVIEW...........................................8

SUMMARY OF THE ARGUMENT .....................................4

ARGUMENT.................................................... 9

CONCLUSION.................................................. 15

CERTIFICATE OF SERVICE .....................................16

# TABLE OF AUTHORITIES

## Cases

Clifton v. State,
    546 So. 2d 173 (Ala. Crim. App. 1998)............. 12-13

Ex Parte Hunter v. State,
    777 So. 2d 60 (Ala. 2000)............................. 14

Minnis v. State,
    690 So. 2d 521 (Ala. Crim. App. 1996)................ 13

## Statutes

13A-6-44................................................11

## Rules

Rule 16.1(a)(2)......................................... 10

Rule 16.5.............................................. 12

## STATEMENT OF THE CASE

This direct appeal is from the March 13, 2003 conviction in Pike County Circuit Court of Charles Kelvin Johns for second degree kidnapping and for the misdemeanor offense of carrying a concealed weapon. Judge Thomas F. Head presided.

On March 12, 2002, Johns was indicted for first degree kidnapping and also for the misdemeanor charge of carrying a concealed weapon. (C. 159-160) On March 13, 2003, Johns was found guilty of the lesser included offense of second degree kidnapping and was also found guilty of carrying a concealed weapon, as charged in the indictment. (C. 95, 161) On March 13, 2003, Johns was sentenced, under the Habitual Felony Offender Act, to serve a term of life in the penitentiary on the second degree kidnapping conviction, and Johns was sentenced to serve a term of six months on the carrying a concealed weapon conviction. (C. 102-104, 163-165)

On April 14, 2003, Johns filed timely notice of appeal. (C. 171)

## ISSUE PRESENTED FOR REVIEW

Because the State complied with Rule 16.1 requiring disclosure of certain defendant statements, A.R.Cr.P., because Johns can show no prejudice from the admission of his inculpatory out of court statement, because he "opened the door" to admission of his inculpatory statement by perjuring himself, and, finally, because the evidence clearly showed him guilty Of kidnapping, must Johns's claim the State violated Rule 16.1 fail as unsupported?

## STATEMENT OF THE FACTS

Mary Alice Leverette, a Pike County employee whose office is in the Pike County Courthouse, was employed in the Pike County Tax Appraisal Department on January 14, 2002, the date of the kidnapping. (R. 89-90) On that date, she was speaking with Courthouse Security Officer Peggy Scott, who was supervising the courthouse metal detector at the front door of the courthouse, when Johns approached the front door. (R. 91-92) When Johns approached the metal detector, he leaped through it and grabbed Officer Scott. (R. 93-96) Then, for the first time since she had spotted Johns, she saw a gun in his hand. (R. 96)

Johns grabbed Officer Scott around the neck, and made a statement to the effect that, "I done told ya'll about messing ...." (R. 97) Johns pointed the gun at Officer Scott and began pulling her towards the Probate Judge's Office. (R. 98) Leverette was placed in fear by Johns's actions, and the fact that Johns possessed a gun made it obvious that he was capable of causing death or serious physical injury. (R. 99-100) When Officer Scott was being held at gunpoint by Johns, she was not "free to go and do

3

what she wanted to do...." (R. 100) Officer Scott also appeared frightened when Johns was abducting her. (R. 114)

Pike County Tax Appraisal Department employee Annette Toney also witnessed the kidnapping of Officer Scott by Johns on January 14, 2002. (R. 115-118) Specifically, she saw Johns with a gun as he held Officer Scott. (R. 122-124) She reported the kidnapping to Sheriff Russell Thomas. (R. 124) From her viewpoint, this frightening situation represented a threat to the lives and the safety of others and could have resulted in death or physical injury. (R. 129)

Lovie Williams, an employee of DSI Security who was also managing the metal detector at the Pike County Courthouse on the date of the kidnapping, also witnessed the kidnapping. (R. 145-152) Specifically, she heard the metal detector beep as Johns stepped through it, and then, when she began to examine Johns, he reached in his jacket pocket, produced a gun, and pointed it at Officer Scott's back. (R. 153-155) Then, Johns grabbed Officer Scott by the collar and instructed her to come with him. (R. 156) She also saw Johns take Scott to the Probate Judge's

4

Office. (R. 158) Scott complied with Johns's orders after he had pointed the gun at her. (R. 176)

She explained that Officer Scott was not wearing a gun. (R. 164-165) She also believed that Johns could have caused serious physical injury to Scott with the gun he held in his hand. (R. 175)

Donna Fannin, an employee with the Pike County Probate Office on the date of the crime, saw Johns dragging Officer Scott into the Probate Office with a pistol in his hand. (R. 177-184) Johns then yelled that he wanted to see "the judge" and that he wanted his information out of the computer. (R. 184) She yelled to the judge, Probate Judge Bill Stone, and Judge Stone hung up the phone and walked into the room. (R. 184-185) She was so frightened by Johns's actions that she hurried all of the clerks out of the office and into the safety of the vault. (R. 185-186) Officer Scott was not free to go if she wished to, considering the fact that Johns had Officer Scott by the neck and was pointing a gun at her. (R. 188-189, 195)

5

Eventually, she was so frightened that she entered the vault herself. (R. 198) She also witnessed Scott actually complying with everything Johns asked her to do. (R. 208)

Pike County Probate Judge Bill Stone was working at his desk on the date of the crime when he heard shouting and stepped out into the outer office to investigate. (R. 212-218) There, he saw Johns in the corner holding Officer Scott by the neck, with a gun pointed at her head. (R. 218-212) Judge Stone then attempted to persuade Johns to drop the handgun. (R. 222-223)

Deputy Sheriff Douglas Wheeler then entered, and Judge Stone backed out of the office. (R. 223-224) Judge Stone admitted that he was frightened for the personal safety of himself and that of everyone in his office. (R. 224-225) Officer Scott was obviously frightened also. (R. 225)

Judge Stone confirmed that Officer Scott was not free to leave while Johns was grasping her neck and pointing a gun at her head. (R. 246) Pike County Sheriff's Deputy Doug Wheeler confirmed that Johns was holding Officer Scott at gunpoint in the Probate Judge's Office. (R. 255-260) Ultimately, Deputy Wheeler was able to convince Johns to

6

drop the pistol. (R. 264-265) Deputy Wheeler introduced the pistol, a .32 caliber revolver, into evidence. (R. 266-270) As soon as Johns dropped his pistol, he was placed into handcuffs and escorted to the Sheriff's Office. (R. 270) Deputy Wheeler also introduced evidence of Johns's five previous drug felony convictions. (R. 275-278)

Officer Peggy Scott confirmed the other testimony concerning the kidnapping, and also confirmed that she was in fear for her life because of the actions of Johns. (R. 292-320) Specifically, she explained how Johns entered the metal detector; it beeped; he grabbed her, and then restrained her at gunpoint. (R. 298-301) She was afraid for her life and safety. (R. 302) Finally, Johns forced her at gunpoint to go with him to Judge Stone's Office. (R. 300-304) Johns's actions resulted in a restriction of her movements. (R. 316-317)

7

## STANDARD OF REVIEW

The standard of review on the issue of the admissibility of evidence is abuse of discretion. Determinations "of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion." Finley v. State, 606 So. 2d 198, 202 (Ala. Crim. App. 1992).

The standard of review of a trial court's ruling on a motion to suppress will not be reversed absent a clear abuse of discretion. Jackson v. State, 589 So. 2d 781, 784 (Ala. Crim. App. 1991). In reviewing a trial court's decision to grant a motion to suppress when the evidence is in dispute (where factual findings are made by the trial judge), a clearly erroneous standard of review is applied by the appellate court. State v. Shelton, 741 So. 2d 473, 476 (Ala. Crim. App. 1999). "The standard of review when there is conflicting evidence at a hearing on a motion to suppress evidence of a confession is whether the trial court's decision was manifestly contrary to the great weight of the evidence." Ex parte Matthews, 601 So. 2d 52, 54-55 (Ala. 1992).

8

## SUMMARY OF THE ARGUMENT

Johns claims the trial court erred when it admitted his inculpatory statement of intent to kill, which was made to the Pike County Sheriff shortly after the hostage situation Johns created was resolved. In Johns's motion to compel, he failed to request disclosure of any pre-trial <u>oral</u> statements he had made to any law enforcement officer, and, thus, the State complied fully with both his motion to compel and with Rule 16.1 of the Alabama Rules of Criminal Procedure.

9

ARGUMENT

> Because The State Complied With Rule 16.1, A.R.Cr.P., Because Johns Can Show No Prejudice From The Admission Of His Inculpatory Out Of Court Statement, Because He "Opened the Door" To Admission Of His Inculpatory Statement By Lying Under Oath, And, Finally, Because The Evidence Clearly Showed Him Guilty Of Kidnapping, The Trial Court Properly Admitted Evidence Of His Confession.

Johns claims the trial court erred when it admitted his inculpatory statement of intent to kill, which was made to the Pike County Sheriff shortly after the hostage situation Johns created was resolved. In his motion to compel, Johns failed to request disclosure of any pre-trial <u>oral</u> statements he had made to any law enforcement officer, and, thus, the State complied fully with both his motion to compel and with Rule 16.1 of the Alabama Rules of Criminal Procedure.

Johns did file a motion to compel regarding both of the initial charges against him. (C. 32-34, 120-122) Although his motion to compel did specifically request "any and all tape recording and stenographic transcription of admissions, confessions ....", Johns failed to request disclosure of the "substance of any oral statements made by the defendant..." as set out in Rule 16.1(a)(2), A.R.Cr.P. As the Pike County District Attorney's Office reminded the

10

trial court during arguments on this issue, the State fully complied with Johns's motion to compel. (R. 358, 361) Consequently, Johns's Rule 16.1 claim is empty. Moreover, shortly after the State became aware of Johns's statement, Johns was also made aware of it and allowed to object to its admission and argue against same. (R. 358-359, 352-355) Rule 16.1 empowers the trial court to allow less than fourteen days for disclosure of statements for good cause shown. Rule 16.1(a). Here, good cause was shown by the late discovery and the late necessity (Johns's perjury) for admission of the statement.

Second, because evidence of an intent to kill is not relevant to a conviction for second degree kidnapping, Johns was not severely prejudiced by admission of his statement that "... hell, no, I came to kill somebody today." (R. 398) A charge of second degree kidnapping only requires that the defendant "abducts another person." Section 13A-6-44, Ala. Code (1994). Even in Johns's brief, Johns admits that his statement of intent to kill to Sheriff Thomas was "not material or relevant to the element of the crime charged." (See Johns's brief at pages 25-26.) Thus, the evidence was not admitted to establish an element

11

of the crime, it was only admitted to impeach Johns's perjured testimony. (As an aside, Johns was also not prejudiced by the admission of this statement without fourteen days notice because, given the fact that he made the statement, he was fully aware of it at all times.) Finally, Johns also suffered no prejudice because he was notified of the statement before its admission and received the benefit of a full discussion of its possible admission before the trial court. (R. 352-367)

At that point in time, Johns also had the opportunity to file a motion for continuance in order to either alter his defense or, as he suggested in his brief, attempt to negotiate a plea bargain. (See Johns's brief at page 27.) Johns, however, failed to request such a continuance. (R. 352-366) Rule 16.5, A.R.Cr.P., specifically states that one of the remedies for intentional non-disclosure, which did not even occur in this case, is that the trial court "may grant a continuance if requested by the aggrieved party...." Again, Johns failed to request a continuance. See also Clifton v. State, 546 So. 2d 173, 177-178 (Ala. Crim. App. 1998), cert. den. As this Court ruled in Clifton, "a new trial is too severe a sanction to

12

impose for noncompliance. None of the undisclosed evidence was exculpatory......" Clifton v. State, 545 So. 2d at 178. Just as in Clifton, the allegedly non-disclosed evidence in this case was also inculpatory, and thus, a new trial was too severe a sanction. See also Minnis v. State, 690 So. 2d 521, 526-527 (Ala. Crim. App. 1996)(where this Court also noted a defendant's failure to request a continuance).

Finally, as in Minnis, any failure to disclose the statement in this case was harmless error. Just as in Minnis, "the appellant's guilt was established beyond a reasonable doubt, and access to the statement would have been inconsequential to his defense even if the statement was subject to discovery." Minnis v. State, 690 So. 2d at 527. In this case, not even in his appellate brief does Johns make a case that he was innocent of second degree kidnapping. Instead, Johns admits that he was merely trying to introduce evidence of his allegedly harmless intent in order to mediate the circumstances of his crime before the jury. (See Johns's brief at pages 25-26.) [An Alabama Supreme Court case relying upon harmless error doctrine in refusing to grant a new trial despite true non-

13

disclosure of a pre-trial statement is <u>Ex parte Hunter</u>, 777 So. 2d 60, 61 (Ala. 2000).]

As an aside, the State also points out that Johns opened the door to admission of his intent to kill by perjuring himself when specifically asked about his pre-trial statements of intent. (R. 370-371) Sheriff Thomas then testified to impeach Johns's perjured testimony. (R. 398) Johns's best argument on appeal then, is reduced to a matter of "if I had known the State would have offered my pre-trial statement to impeach my testimony, then I would not have perjured myself on the stand." This is not an appropriate argument for appeal.

## CONCLUSION

Based on the precedent and arguments presented herein, Johns's convictions and the related sentences are due to be affirmed.

          William H. Pryor Jr.
          *Attorney General*
          By:

          _____
          Hense R. Ellis II
          *Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2003, a copy of the foregoing was served on the appellant by placing the same in the United States mail, first class postage prepaid and addressed as follows:

Thomas H. Claunch, III
Harding and Claunch
Suite 100-0
2800 Zelda Road
Montgomery, AL 36106

_____
Hense R. Ellis II
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery AL 36130-0152
(334) 242-7300
121836/JOHNS

16