IN THE ALABAMA COURT OF CRIMINAL APPEALS


Charles K. Johns,
     APPELLANT

VS.

STATE OF ALABAMA,
     APPELLEE


ON APPEAL FROM THE CIRCUIT COURT OF
PIKE COUNTY, ALABAMA

CASE NO's. CC-2002-96 & CC-2002-97
CRIMINAL APP. NO. CR-0


BRIEF FOR
Charles K. Johns
APPELLANT


Thomas K. Brantley, Attorney at Law
Ala. Bar #, (BAR049)
Brantley & Parker, L.L.C.
401 North Foster St.
Dothan, Alabama 36303
(334) 793-9009
ATTORNEY FOR APPELLANT


EXHIBIT

# TABLE OF CONTENTS

TABLE OF CITATIONS ........................................ 3

TABLE OF ADVERSE DECISIONS ................................ 5

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................. 8

STATEMENT OF THE CASE .................................... 9

STATEMENT OF THE FACTS ................................... 11

ARGUMENT ................................................. 19

CONCLUSION ............................................... 29

CERTIFICATE OF SERVICE ................................... 30

# TABLE OF CITATIONS

## Table of Citations

**Cited Cases:**

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, (1963)..25

Duncan v. State, 575 So.2d 1198, at 1203.
(Ala. Crim. App. 1990)..................................23

Ex parte Dickerson,517 So.2d 628 at 630,(Ala. 1987)..25,27

Ex parte Kimberly, 463 So.2d 1109, 1111 (Ala.1984)....23

Ex parte Lambert, 519 So.2d 899 (Ala.1987). ..........22

Ex parte Marek, 556 So.2d 375 (Ala.1989)..............21

Fulford v. Maggio, 692 F.2d 354, 358 (5th Cir.1982),
reversed on other grounds,
462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983)...23

Gibson v. State, 555 So.2d 784 at 790, (Ala.Cr.App.,1989)22

Patton v. State, 530 So.2d 886 at 889 (Ala.Cr.App.1988) ..23

Pettway v. State, 607 So.2d 325, at 331.
Ala. Crim. App. 1992)..................................21

Roberson v. State, 595 So.2d 1310, 1316 (Miss.1992).....21

Sellers v. Estelle, 651 F.2d 1074, 1077 (5th Cir.1981)...27

State v. Moore, 731 S.W.2d 351, 353 (Mo.App.1987).......21

State v. Willis, 438 So.2d 605, 613 (La.App.1983).......21

U.S. v. Agurs, 427 U.S 97, 96 S.Ct. 2392. (1976)........23

United States v. Cochran, 697 F.2d 600, 605 (5th Cir.1983).27

Young v. State 494 So.2d 862, at 863.(Ala. Crim. App. 1986)23

Cited Statutes and Rules:

Code of Alabama, 1975, §13A-5-9.........................9,26

Code of Alabama, 1975, §13A-5-40..........................9

Code of Alabama, 1975, §13A-6-44..........................9

Rule 16.1, Alabama Rules of Criminal Procedure...........19

Rule 16.2, Alabama Rules of Criminal Procedure...........19

Rule 16.3, Alabama Rules of Criminal Procedure...........19

## TABLE OF ADVERSE DECISIONS

1.  Defense objects to the state of the Jury, that pursuant to *Baston v. Kentucky* the State's strikes were racially motivated. Motion is denied, as to the opinion that Defendant did not make a prima facie showing against the State. (R-83)

2.  The State's objection to testimony on cross by Defense, of witness Leverrette, as to "other than Mr. Johns grabbing Ms. Peggie did she observe Mr. Johns commit any crime". Sustained (R-103)

3.  On re-direct State objects to form on testimony of witness Leverrette. Sustained (R-108)

4.  On re-direct State objects to testimony of witness Leverrette, as to Mr. Johns reputation in the community. Sustained (R-109)

5.  On re-direct the Court objects to Defense form of question to witness Leverrette as to her daughter telling her about the Johns family. Overruled (R-110)

6.  On re-direct the State objects to testimony as to witness Leverrette's opinion of the Johns' family during the time her daughter was a friend with Mr. Johns' family. Sustained (R-110)

7.  On re-direct the State objects to questioning by Brantley as to the witness coming to know Mr. Johns reputation for telling the truth. Sustained (R-111) State withdraws objection.(R-111)

8.  On re-direct the State objects to witnesses answer to Defense form of question as speculative. Sustained (R-111)

9.  On re-direct the State objects to Defense form of questioning to witness; as to seeing Mr. Johns ever commit any acts of violence? Sustained (R112)

10. Defense objects to hearsay, overruled. (R159).

11. State objects to Defense characterization of witness' testimony on cross. Sustained. (R191).

12. State objected to form of question. Sustained (R202).

13. State objected to form of question calling for a mental conclusion. Sustained. (R207).

14. Defense motion for mistrial based upon the fact that a juror gave a note to the witness', (Judge Stone) wife. Denied. (R249).

15. State objects to question as to peacefulness of persons convicted of drug offenses. Sustained. (R276)

16. Defense objected to leading question. Over-ruled. (R316).

17. Defense objected on bases of asked and answered. Over-ruled. (R319).

18. State objected on bases of asked and answered. Sustained. (R320).

19. At close of State's case, Defense motion for judgment of acquittal on the Kidnapping First Degree based on the State's failure prove a prima facie case, on the bases that the Defendant had successfully interject the defense of voluntary release, in a safe place, without serious physical injury prior to apprehension. (R321), Denied (R333).

20. Defense objected to questioning about Mr. Johns statements made to law enforcement after his arrest based upon the fact that the State had not furnished the defense with a copy of any statements from the Mr. Johns pursuant to discovery. Overruled. (R352-533).

6

22. Defense objected to question of Mr. Johns based on improper predicate. Over-ruled. (R 354).

23. Defense objected to form of impeachment of witness. Over-ruled. (R355).

24. The defense moved to suppress any statements made by Mr. Johns and moved for a mistrial because the jury had heard about the statement. Denied as to mistrial. (R356).

25. The defense moved to suppress any statements made by Mr. Johns and moved for a mistrial because the jury had heard about the statement. Denied as to suppression of Mr. Johns statement. (R363).

26. Defense objected to form of question. Over-ruled. (R371).

27. Defense objected to relevance of questioning by state regarding where arms were place when in handcuffs. Over-ruled. (R 395).

28. Defense renewed its motion for judgment of acquittal. (R400). Denied (R413).

29. Defense requested jury charge of Unlawful Imprisonment in the First Degree. (R 414). Denied (R415).

30. Defense moved for a mistrial based on victim speaking with a juror during lunch break after all closing argument. (R420-424).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the State's failure to provide defense notice and substance of Johns' oral statement made to Sheriff after arrest, pursuant to <u>Alabama Rules of Criminal Procedure</u> and law substantially prejudiced the defense and deprived Johns of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment of the United States Constitution, and controlling state law.

     Yes.

## STATEMENT OF THE CASE

The Appellant, Charles K. Johns a/k/a Charles Mayhand, herein after referred to as Johns, was arrested on the charges of Kidnapping 2nd Degree and Carrying a concealed weapon on January 14,2002 (C-26,27), indicted on March 12th, 2002,(C-49) was formally arraigned on March 20th, 2002, pursuant to *Code of Alabama*, 1975, §13A-5-40(15)(52). Johns was convicted of the same on March 13,2003, Defendant Johns was found guilty of Kidnapping, Second Degree, in violation of § 13A-6-44, *Code of Alabama* (1975)(C-102). The Court took into consideration that the Defendant Johns had five (5) prior felony convictions, *Alabama Habitual Offender Act* § 13A-5-9, *Code of Alabama* (C-103).  The Defendant Johns was sentenced, as a habitual offender to serve a sentence of life imprisonment in the penitentiary of the State of Alabama concurrently with his sentence in companion Case No. CC-2002-97, and to pay costs and $50.00 to be distributed to the Alabama Crime Victim Compensation Commission.  Defendant Johns is given credit for time served while awaiting trial and/or disposition in the above case (C104).  The Defendant Johns was sentenced to six-(6) month's imprisonment in the Pike Co. Jail, concurrently

with his sentence in companion Case CC-2002-96 (C-164). To pay costs and $25.00 to be distributed to the Alabama Crime Victim Compensation Commission, Defendant was given credit for all time served while awaiting trial and/ or disposition of this case(C-104).

The Defendant Johns made an oral notice of appeal, (C-104), and request for a "working appeal" (C-104).  The Defendant's attorney filed a written Notice of Appeal on April 14, 2003, (C-171).  This appeal follows.

## STATEMENT OF THE FACTS

This matter was tried before the Hon. Thomas E. Head, III, Circuit Court Judge, Twelfth Judicial Circuit on March 12,2003. The Hon. Gary L. MacAliley, District Attorney for the Twelfth Judicial Circuit represented the State. The Hon. Thomas K. Brantley, Dothan, represented the Defendant Johns. A jury was struck in this case and the trial proceeded.

The State produced its first witness, an employee in the Pike County Court Probate Office, Mrs. Leverette. Mrs. Leverette testified that she came to work on January 14, 2002 at the Probate office. She was standing in the front of the Court House , talking it Ms. Peggy Scott, the victim in this case. She testified that she saw Mr. Johns come into the Court House at about 8:30 a.m. She said that he came through the front door and walked through the metal detector. She saw Mr. Johns then grab the victim and put his arm around her chest or neck area. (R. 96) She then saw a gun in Mr. Johns' hand. The witness did not remember what Mr. Johns said but saw him begin to pull the victim toward the Probate Court, with the gun kind of pointed at her. (R98). The witness then stated that she returned to the

Probate Office to warn her co-workers of what she had seen.
(R100).

On cross-examination, Mrs. Leverette stated that the
incident took "just a matter of minutes".(R101). She stated
that she did not hear Mr. Johns demand money or any other
demand from the victim. (R103). She further testified that
his behavior on the day the crime was committed was
inconsistent with what she had observed of him during the
years that she had known him. (R112).

The st called Annette J. Toney, who was employed at the
Pike County Tax Appraisal Office on the date of the crime.
She stated that she saw Mr. Johns come inot the Court House
and grab the victim, put his arm around her neck and pull a
gun out. (R120-121). She stated that upon observing this
she ran to the Sheriff's Office, which is also located in
the Court House. She testified that she told the Chief
Deputy Sheriff, Doug Wheeler, that he need to come quickly
to the lobby of the Court House. (R124). She told him that
Mr. Johns had a gun. She walked behind the Sheriff and the
Chief Deputy back to the lobby of the Court House and
watched as they began to speak to Mr. Johns.

On cross-examination, Mrs. Toney stated that she never saw Mr. Johns point the gun at the victim or heard him threaten her in any way. She testified that she did not see the Sheriff or his Deputy pull a gun and point it at Mr. Johns. (R132). She stated that she never saw Mr. Johns be put in any danger. (R133). She testified that over the twenty years that she has known Mr. Johns, he has had a good reputation for telling the truth and that she would believe him under oath. (R135).

On re-direct, she testified that his reputation for peacefulness had been good. (R139).

The State next called Lovie Williams. She testified that she was employed by the security company which provided security for the Court House. (R. 147). She was working the morning of the incident with the victim. The witness was a trainee with the security company. She related that she remembered Mr. Johns coming into the Court House and going through the metal detector, the grabbing the victim and pulling a gun from his clothes and stick it behind the back of the victim. (R155). She stated that she watched Mr. Johns walk toward the Probate Office with the victim. She then stood by the front door so no one else

could come in. (R.161). She did not observe the Sheriff nor his Deputy apprehend Mr. Johns. (R163-165).

On cross-examination, Ms. Williams testified that she did not see Mr. Johns make any threats nor did she any serious physical injury to the victim immediately after her release. (R173-174).

The State next called Donna Fannin. (R177). Ms Fannin testified that she was working in the Probate Office on the morning of January 14, 2002. (R178). She stated that she saw Mr. Johns holding the victim and saw the gun. She then went into the Probate Judge's office and called for Judge Stone, Probate Judge. (R184). She stated that Judge Stone began talking to Mr. Johns, trying to get him to calm down. (R185-186).

On cross-examination, she testified that Mr. Johns never pointed the gun at Judge Stone. (R196).

The State next call Probate Judge Bill Stone. (R212). Judge Stone testified that after he approached Mr. Johns, Mr. Johns asked him to get Mr. Johns' information of the computer. (R220).

During an in-camera hearing on a matte of evidence, the Defense observed a juror pass a note to Judge Stones' wife,

during his testimony or during a break in Judge Stones'
testimony. (R247). Whereupon, Mrs. Stone was sworn in and
testified that the note informed her of a yard sale at the
First Baptist church on April 5th. (R248-9). The defense
made a motion for a mistrial, which was over-ruled.
(R.249).

The State next called Chief Deputy Doug Wheeler.
(R.255). Mr. Wheeler stated that he talked to Mr. Johns and
asked him what was wrong and tried to get him to put the
gun down. (R. 262). Deputy Wheeler testified that he
ultimately "prevailed" upon Mr. Johns to put the gun down.
(R265). Deputy Wheeler testified, on brief voir dire, that
he got the pistol from Mr. Johns,..."after he laid it
down,..." (R269-270). Deputy Wheeler stated that they did
not make any promises or say anything else to Mr. Johns to
thet him to put the pistol down. (R271).

On cross-examination, Deputy Wheeler testified that he
nor Sheriff Thomas had their guns drawn on Mr. Johns, and
that he voluntarily gave his pistol to them. (R273). He
testified that after Mr. Johns put the pistol down, the
victim was release. (R273). Deputy Wheeler further
testified that Mr. Johns had a good reputation for telling

the truth and for being peaceful, over the years that he had known Mr. Johns. (R275).

The State next called Russell Thomas, Sheriff of Pike County, Alabama. (R279). He testified that he was in the Court House on the morning of January 14, 2002. (R279). He testified that he saw Mr. Johns holding the victim in the corner of the lobby of the Court House with a gun pointed at her. Sheriff Thomas stated that he and Deputy Wheeler negotiated with Mr. Johns and did not make any promises to him and that Mr. Johns put the gun down and then the handcuffs were placed on him. (R284-285).

The State called the victim, Peggy Scott. (R292). Ms. Scott testified that she was a security guard at the Court House on January 14, 2002. (R293). She stated that Mr. Johns came through the metal detector, grabbed her and pulled a gun and pointed it at her. She stated that they went toward the Probate Office, where Judge Stone came and talked to Mr. Johns for a few minutes. (R298-306). She testified that after the Sheriff and Deputy talked to Mr. Johns for a few minutes he laid the gun on the table tin the Probate Office. (R309).

ON cross-examination, Ms. Scott admitted that Mr. Johns voluntarily release her after the Sheriff asked him to let her go, without force or threat of force from them to Mr. Johns. (R318-319). State rests. (R321).

Mr. Johns took the stand, (R336), and testified that he had been previously convicted of several drug offenses. (R337). Mr. Johns testified that he came to the Court House that day because he had some serious problems whit his property and that he wanted some attention. (R339). He stated that he had been trying to get his problem straight for several years. (R340). He stated that his purpose for grabbing Ms. Scott was to get some attention and that he did not intend to hurt her. (R343). Mr. Johns testified that he did not go to the Court House to threaten to kill anybody. (R345).

On cross-examination, the State began questioning Mr. Johns exclusively about his responses to his answers on direct regarding his intentions to not hurt anyone at the Court House, (R350). The State repeatedly ask Mr. Johns whether he came to the Court House to hurt anybody. (R350-352).

The defense moved to suppress any statements made by Mr. Johns and moved for a mistrial because the jury had heard about the statement. The Defense perceived the State's direction of questioning and surmised the State was setting Mr. Johns up for introduction of a statement of his that was not revealed or produced in discovery.(R356). The Court over-ruled both motions. (R356, 363).

The State called Sheriff Russell Thomas. (R394) Sheriff Thomas stated that he took Mr. Johns to his office after he was apprehended and was handcuffed. Sheriff Thomas stated that he had conversation with Mr. Johns about the incident, asking him if he wanted family to be called or any one to be there.

Sheriff Thomas stated that Mr. Johns responded to his question as to whether he regretted how he handled this matter. Sheriff Thomas stated that Mr. Johns stated to him, "Hell no, I came to kill somebody today". (R398). The defense reiterated the continuing objection. The State rested and the Defense rested. (R399).

Whereupon, the jury was charged and returned with a verdict of guilty of Kidnapping in the Second Degree and Carrying a concealed weapon. (R448).

**ARGUMENT**

Whether the State's failure to provide defense notice and substance of Johns' oral statement made to Sheriff after arrest, pursuant to Rule 16.1, <u>Alabama Rules of Criminal Procedure</u>, substantially prejudiced the defense and deprived Johns of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment of the United States Constitution, and controlling state law. Yes.

The <u>Alabama Rules of Criminal Procedure</u>, RULE 16.1 "DISCOVERY BY THE DEFENDANT" provide:

> **(a) Statements of Defendant**. Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown:
> (1) Permit the defendant to inspect and to copy any written or recorded statements made by the defendant to any law enforcement officer, official, or employee which are within the possession, custody, or control of the state/municipality, <u>the existence of which is known to the prosecutor</u>; and
> (2) <u>Disclose</u> the *substance of any oral statements made by the defendant*, before or after arrest, to any law enforcement officer, official, or employee <u>which the state/municipality intends to offer in evidence at the trial</u>. (Emphasis supplied).
> The facts of this case show that the State failed to

provide the Defense with notice of the existence of the

oral statement of the Defendant, much less the substance of the oral statement by the Defendant.

The Defense provided to the State a written request for discovery entitled "Motion to Compel Disclosure and Notice to Produce", (C32), being date-stamped and filed by the Clerk of Court on January 29, 2002. The State responded on or about the 4th day of March 2002, with "States First Response to Defendant's Motion for Discovery", which was nominated and offered into evidence as "Defendant's Exhibit 1". (R6). In the State's response included in paragraph (5) c)the following; "The Defendant has not made a statement." (R7).

The *rebuttal testimony* from the State's witness, Sheriff Thomas, was that *after* Mr. Johns had been apprehended, taken into custody Sheriff Thomas took him to his office and talked with him. (R396). Sheriff Thomas spoke to him about his family coming to be with him. Finally, Sheriff Thomas testified as follows:

Q.   And what did you say to Mr. Johns?

A.   One of the last things I said to Charles, I looked at Charles and I said, Charles, don't you regret the

way you handled this. And his response to me was hell, no, I came to kill somebody today. (R398).

Mr. Johns was speaking to the Sheriff of the County, the top law enforcement officer in the county and made an incriminating statement. The State did not deny that the statement was not produced to the Defense.

After a series of objections from the Defense and discussion and argument at the bench prior to the statement being admitted, the Honorable Court allowed the statement into evidence.

In order for a Defendant to preserve the issue for appeal he must make a timely objection to the introduction of the offending evidence in order to allow the Court to prevent or remedy any error. Ex parte Marek, 556 So.2d 375 (Ala.1989) *Roberson v. State,* 595 So.2d 1310, 1316 (Miss.1992); *State v. Moore,* 731 S.W.2d 351, 353 (Mo.App.1987). Pettway v. State, 607 So.2d 325, at 331. (Ala. Crim. App. 1992).

> The requirement of a timely objection simply gives the trial court the opportunity to take corrective action where such action is warranted, see *State v. Willis,* 438 So.2d 605, 613 (La.App.1983), and is in keeping with standard trial procedure and evidentiary rules. Pettway v. State, 607 So.2d 325, at 332. (Ala. Crim. App. 1992).

The Defense made timely objection and thorough argument regarding this objection and properly preserved it for review.

In response to the Defense objection, the State relied on first, the fact that the statement was oral. The State argued that it could not provide a photo-copy of what was in someone's mind. Ostensibly, the State was arguing that the statement, not being recorded in any way, and being only in the mind of Sheriff Thomas, was not subject to discovery.

> Oral statements made by the accused to any law enforcement officer, official, or employee must be disclosed to the accused prior to trial if the State intends to offer them into evidence at trial. *See also Ex parte Lambert*, 519 So.2d 899 (Ala.1987). Gibson v. State, 555 So.2d 784 at 790, (Ala.Cr.App.,1989).

It is anticipated that the State will argue in response to this appeal that the statement was offered in rebuttal to Mr. Johns' testimony and would not be subject to discovery rules and law. However, Lambert, mitigates against that proposition, to-wit:

> The State argues that being provided with a statement of the substance of the oral statements would not have aided the defendant. The Rule does not provide for an exception based on whether discovery of the statement

would aid the defendant's case. It simply mandates that upon the defendant's discovery motion, "the substance of any oral statements" will be provided to him. *Ex parte Lambert*, 519 So.2d 899 (Ala.1987).

Further, the State argued that the statement was made to a law enforcement officer and the State's Attorney had no knowledge of the statement until just before Mr. Johns testified. The knowledge of the statements with law enforcement is imputed to the prosecutor.

In the present case, the appellant specifically requested the yellow legal pad. Whether the prosecutor knew of the existence of the pad, the knowledge of the law enforcement agents is imputed to the prosecutor. See *Patton v. State*, 530 So.2d 886 at 889 (Ala.Cr.App.1988) *Fulford v. Maggio*, 692 F.2d 354, 358 (5th Cir.1982), reversed on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). The information contained in the yellow legal pad was never disclosed to the appellant or to defense counsel; thus the evidence was suppressed. *Patton*, supra. Moreover, as stated in U.S. v. Agurs, 427 U.S 97, 96 S.Ct. 2392. (1976). and quoted in *Ex parte Kimberly*, 463 So.2d 1109, 1111 (Ala.1984), "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." Duncan v. State, 575 So.2d 1198, at 1203.(Ala. Crim. App. 1990).

The Defense made timely written request for discover, specifically requesting information about Mr. Johns' statements. (C32).

Further, the State has a continuing duty to disclose discoverable material. In the case of Young v. State,

(infra), the prosecutor learned of the statement only after the trial started and into the second day. Further, the Defense did not know of the statement until it was disclosed on the witness stand before the jury.

> Temp.Rule 18.3, A.R.Crim.P., imposes an affirmative duty on the parties to continue to disclose:
>> "Subsequent to compliance with an order issued pursuant to Temporary Rule 18.1 or 18.2, and prior to or during trial, if a party discovers additional evidence or decides to use additional evidence, which information has been subject to discovery under this rule, that party shall promptly notify the court and the opposing party of the existence of the additional evidence to allow the court to modify its previous order for additional discovery or inspection."
>> Young v. State 494 So.2d 862, at 863.(Ala. Crim. App. 1986)

Such was the case at bar. Mr. Johns argues that the continuing duty to disclose imposes upon the prosecutor the obligation to a minimal and cursory discussion with the law enforcement personnel regarding the events giving rise to the charge. In this case, the highest law enforcement officer in the county was a material witness, participated in the resolution of the event and personally participated in the apprehension of Mr. Johns. Further, he had discussions with Mr. Johns after his arrest or apprehension; *verbal communications.* These were communications that *were* investigatory in nature and

obviously calculated to cultivate unfavorable evidence. Without casting dispersions or accusations upon the character of the very Honorable Mr. McAliley, who is a revered and respected jurist and legal practitioner for many years in Pike County and this Great State, it would seem to stretch credulity that in his investigation and preparation for this trial that there surely were conversations between himself and the Sheriff but there was no mention by the sheriff to the prosecutor of such a statement by Mr. Johns.

The continuing duty to disclose statements by the defendant apply to such statements in spite of the intent or plan to use such statements at trial. The good faith or bad faith of the prosecutor is irrelevant. Ex parte Dickerson, 517 So.2d 628 at 630, (Ala. 1987).

If that were not the case, no statements would ever be "intended" for use at trial until the appropriate time, whereby the immediate discovery would obviate the spirit and letter of the rule.

The Defense does not make an argument under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, (1963). The statements attributed to Mr. Johns by Sheriff Thomas were

not material or relevant to the elements of the crime charged. The statements were, however, very unfavorable to Mr. Johns. His entire defense, as made obvious by cross-examination of the state's witnesses, as well as his direct testimony, was that he was a peaceable man who was acting out of character and under duress of weighty issues. Further, the defense intended to show that he released the victim voluntarily, in a safe place, without serious physical injury prior to apprehension. His statements were that he only wanted attention. His entire Defense was aimed at mitigating the effects of his actions. The introduction of his purported statements by Sheriff Thomas, were severely prejudicial if in no other facet than in the sentencing portion of the trial.

Mr. Johns was faced with a range of punishment from between 20 years to life in the penitentiary.

Code of Alabama, 1975, §13A-5-9, provides that:

(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he or she must be punished as follows:

. . .

(2) On conviction of a Class B felony, he or she must be punished by imprisonment for life or any term of not less than 20 years.

Mr. Johns submits that his entire defense was prejudiced by his lack of notice or information regarding the statements testified to by Sheriff Thomas. The prejudice was manifest in the sentence issued by the Honorable Judge Head. He received the maximum sentence, where there were no injuries and relatively little disturbance in the scene of the crime. The incident only lasted for less than 15 to 20 minutes.

Further, Mr. Johns may have reconsidered his insistence on a trial, and negotiated a plea bargain for much less time that what he receive, had he known that Sheriff Thomas would testify as he did.

> There is authority that evidence which is both favorable and unfavorable to the defendant must be disclosed under *Brady, Sellers v. Estelle,* 651 F.2d 1074, 1077 (5th Cir.1981), but this requirement does not include inculpatory evidence. *United States v. Cochran,* 697 F.2d 600, 605 (5th Cir.1983). *Ex parte Dickerson,* 517 So.2d 628 at 630, (Ala. 1987).

The law is clear that the Court has discretion in determining a fair remedy for the introduction of newly discovered evidence. The Court can allow a continuance to allow the Defense to prepare for the statement or, if warranted, exclude the evidence. Most severely, the Court

can declare a mistrial. Mr. Johns argues that the
introduction of the alleged statements that he made were so
highly prejudicial as to probably affect the outcome of the
trial.


## CONCLUSION

Mr. Johns submits that the rules are explicitly clear,
and the law is well settled in that the state is required
to provide the Defense notice and substance of all
relevant, material, favorable or unfavorable statements by
the Defendant whether those statements are recorded in any
form or made orally and remain only in the consciousness of
a human being.

Further, Mr. Johns argues that he was substantially
prejudiced by the surprise revelation of his alleged
statement to Sheriff Thomas. The substance of the alleged
statement had the effect of eviscerating any mitigation or
potential explanation that he had for his actions on that
day. Mr. Johns submits the trial court erred in allowing

his alleges statements into evidence over timely and properly preserved objection.

Respectfully submitted this the _13th_ day of _August_ , 2003.

_Thomas K Brantley_

THOMAS K. BRANTLEY (BRA040)
ATTORNEY FOR APPELLANT
BRANTLEY & PARKER, L.L.C.
401 NORTH FOSTER STREET
DOTHAN, ALABAMA 36303
(334) 793-9009

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Brief of Appellant upon the Honorable Bill Pryor, Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36310, by placing a copy of same in the United States Mail first class mail, properly addressed and postage prepaid, on this the 13th day of August, 2003.

_KB_

THOMAS K. BRANTLEY
ATTORNEY FOR APPELLANT