Ellis 58418

ORIGINAL

1031048.

IN THE SUPREMEM COURT OF ALABAMA

CHARLES K. JOHNS,
APPELLANT,

VS.

STATE OF ALABAMA,
APPELLEE,

PETITION FOR WRIT OF CERTIORARI

BRIEF AND ARGUMENT IN SUPPORT OF PETITION FOR WRIT OF CERTIORARI

04-19-04 Submitted For Preliminary Examination

BRIEF OF APPELLANT

05/14/2004 - Writ Denied. No Opinion. Houston, J., See, Lyons, Johnstone, and Woodall, JJ., concur. 1031048. Court CR. Appeals # CR-02-1375

CHARLES K. JOHNS
APPELLANT PRO-SE
AIS # 154434 10-B-26-T
VENTRESS CORR. FAC.
P.O. Box 767
Clayton, Alabama 36016

EXHIBIT
H

## TABLE OF CONTENTS

| | | PAGE(S) |
|---|---|---|
| 1. | **TABLE OF CONTENTS** ........ | i |
| 2. | TABLE OF AUTHORITIES ........ | ii, iii |
| 3. | STATEMENTS OF ISSUES PRESENTED FOR REVIEW ........ | |
| 4. | STATEMENT OF CASE ........ | 2 |
| 5. | STATEMENT OF FACTS ........ | 3 |
| 6. | ARGUMENT ........ | 8 |
| 7. | CONCLUSION ........ | 15 |
| 8. | CERTIFICATE OF SERVICE ........ | 16 |

# TABLE OF AUTHORITIES

| | PAGE(S) |
|---|---|
| 1. **BRADY VS. MARYLAND,** 373 U.S. 83, 83 S.Ct. 1194 (1963)......... | 13 |
| 2. **DUNCAN VS. STATE,** 575 So.2d. 1198, at 1203 ( ALA.CR.APP. 1990) .................................... | 11 |
| 3. **EX PARTE DICKERSON,** 517 So.2d. 628 at 630 ( ALA.1987) ......... | 13, 14 |
| 4. **EX PARTE KIMBERLY,** 463 So.2d. 1109, 1111 ( ALA.1984) ......... | 11 |
| 5. **EX PARTE LAMBERT,** 519 So.2d. 899 ( ALA.1987) ......... | 11 |
| 6. **EX PARTE MAREK,** 556 So.2d. 375 ( ALA. 1989) ......... | 10 |
| 7. **FULFORD VS. MAGGIO,** 692 F.2d. 354, 358 (5th Cir. 1982) ........ reversed on other grounds 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d. 794 ( 1983) ........ | 11 |
| 8. **GIBSON VS. STATE,** 555 So.2d. 784 at 790 ( ALA.CR.APP. 1989) ........ | 11 |
| 9. **PATTON VS. STATE,** 530 So.2d. 886 at 889 ( ALA.CR.APP. 1988) ........ | 11 |
| 10. **PETTWAY VS. STATE,** 607 So.2d. 325 at 331 ( ALA.CR.APP. 1992) .. | 10 |
| 11. **ROBERSON VS. STATE,** 595 So.2d. 1310, 1316 ( MISS. 1992) ...... | 10 |
| 12. **SELLERS VS. ESTELLE,** 651 F.2d. 1074, 1077 ( 5th Cir. 1981) ... | 14 |
| 13. **STATE VS. MOORE,** 731 S.W.2d. 351, 353 ( MO. APP. 1987) ...... | 10 |
| 14. **STATE VS. WILLIS,** 438 So.2d. 605, 613 ( LA.APP. 1983) ...... | 10 |
| 15. **U.S. VS. AGURS,** 427 U.S. 97, 96 S.Ct. 2392 ( 1976) ...... | 11 |
| 16. **UNITED STATES VS. COCHRAN,** 697 F.2d. 600, 605 ( 5th Cir. 1983) ...... | 14 |
| 17. **YOUNG VS. STATE,** 494 So.2d. 862 at 863. ( ALA.CR.APP. 1986) .. | 12 |

## CITED STATUTES AND RULES

1. **CODE OF ALABAMA, 1975** §13A-5-9 .................... 2, 14
2. **CODE OF ALABAMA, 1975** § 13A-5-40 .................... 2
3. **CODE OF ALABAMA, 1975** § 13A-6-44 .................... 2
4. RULE 16.1 ALABAMA RULES CRIMINAL PROCEDURE .................... 8
5. RULE 16.2 ALABAMA RULES CRIMINAL PROCEDURE ....................
6. RULE 16.3 ALABAMA RULES CRIMINAL PROCEDURE ....................

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

Whether the State's failure to provide Defense Notice and substance of John's Oral Statement made to Sheriff after arrest, pursuant to **ALABAMARULES OF CRIMINAL PROCEDURA** and law substantially prejudiced the defense and deprived Johns of a fair Trial as guaranteed by the Due Process Clause of the Fifth Amendment of the United States Constitution, and controlling State Laws.

**YES!!**

**STATEMENT OF THE CASE**

The Appellant, **CHARLES R. JOHNS** a/k/a **CHARLES MAYNARD**, herein after referred to as **JOHNS**, was arrested on the charges of **KIDNAPPING 2nd Degree and CARRYING A CONCEALED WEAPON** on January 14, 2002, Indicted on March 12th, 2002, and was formally arraigned on March 20th, 2002, pursuant to the **CODE OF ALABAMA, 1975** § 13A-5-40. Johns was convicted of the same on March 13, 2003. Defendant Johns was also found Guilty of the charge of **KIDNAPPING**, Second Degree, in violation of § 13A-6-44, **CODE OF ALABAMA, 1975.** The Court took into consideration that Defendant Johns had Five (5) prior Felony Convictions, **ALABAMA HABITUAL OFFENDER ACT**, § 13A-5-9, **CODE OF ALABAMA 1975.**

Defendant Johns was sentenced as a Habitual Offender to serve a Sentence of Life Imprisonment in the penitentiary in the State of Alabama to run Concurrently with his sentence in his companion case, **NO. CC-2002-97**, and to pay Court costs and **$ 50.00** to be distributed to the Alabama Crime Victim Compensation Commission. Defendant Johns is given credit for time served while awaiting t rial and/ or disposition in the above case.

Defendant Johns was sentenced to Six (6) Months imprisonment in the Pike County Jail, Concurrently with his sentence in his companion case, **§ CC-2002-96**, Defendant was further ordered to pay costs and $ 25.00 to be distributed to the Alabama Crime Victim Compensation Commission, Defendant was given credit for all time served while awaiting trial and/ or disposition of this case.

Defendant Johns then made Oral Notice of Appeal, and requested a Working Appeal. Defendant's Attorney then filed a written Notice of Appeal April 14, 2003. Alabama Court Criminal Appeals Affirmed case on 3-19-04, ON REHEARING

STATEMENT OF THE FACTS

This matter was tried before the Honorable Thomas E. Head, III, Circuit Court Judge, Twelfth Judicial Circuit on March 12, 2003. The Honorable Gary L. MacAliley, District Attorney for the Twelfth Judicial Circuit represented the State. The Honorable Thomas K. Brantley, Dothan, represented the Defendant in this Cause. A Jury was struck in this case and the trial proceeded.

The State produced it's first witnessed, an employee in the Pike County Probate Office, Mrs. Leverette. Mrs. Leverette testified, that she came to work on January 14, 2002 at the Probate Office. She was standing in the front of the Courthouse, talking to Ms. Peggy Scott, the victim in this case. She testified that she saw Mr. Johns come into the Courthouse at about 8:30a.m. She said that he came through the front door and walked through the metal detector. She saw Mr. Johns then grab the victim and put his arm around her chest or neck area. She then saw a gun in Mr. Johns hand. The witness did not remember what Mr. Johns' said, but, saw him begin to pull the victim toward the Probate Court, with the gun kind of pointed at her. The witness then stated, that she returned to the Probate Office to warn her Co-Workers of what she had seen.

On Cross-examination, Mrs. Levertte, stated that the incident took " JUST A MATTER OF MINUTES". She stated that she did not hear Mr. Johns demand money or any other demand from the vitim. She further testified that his behavior on the day that the crime was committed was inconsitent with what she had observed of him during the years that she had known him.

The State called Anette J. Posey, who was employed at the Pike County

Tax Appraisal Office on the date of the crime. She stated that she saw Mr. Johns' come into the Courthouse and grab the victim, put his arm around her neck and pull a gun out. She stated that upon observing this, she ran to the Sheriff's Office, which is also located in the Court House. She testified that she told the Chief Deputy Sheriff, DOUG WHEELER, that he needed to come quickly to the lobby of the Courthouse. She told him that Mr. Johns' had a gun. She walked behind the Sheriff and the Chief Deputy back to the lobby of the Courthouse, and watched as they began to speak to Mr. Johns'.

On Cross-Examination, Mrs. Toney stated that she never saw Mr. Johns' point the gun at the victim or heard him threaten her in any way. She further testified that she did not see the Sheriff or his Deputy pull a gun and point it at Mr. Johns'. She stated that she never saw Mr. Johns' be put in any danger. She further testified that over the Twenty Years that she has known Mr. Johns', he has had a good reputation for telling the truth and that she would believe him under oath.

On Re-direct, she testified that his reputation for peacefulness had been good.

The State next called LOVIE WILLIAMS. She testified that she was employed by the Security Company which provided Security for the Courthouse. She was working the morning of the incident with the victim. The witness was a trainee with the Security Company. She related that she remembered Mr. Johns' comming into the Courthouse and going through the Metal Detector, then grabbing the victim and pulling a gun from his clothes and stick it behind the back of the victim. She further stated that she watched Mr. Johns' walk towards the Probate Office with the Victim. She then stood

by the front door, so no one else could come in. She did not observe the Sheriff nor his deputy apprehend Mr. Johns.

On Cross-Examination, Ms. Williams testified that she did not see Mr. Johns' make any threats nor did she see any serious physical injury to the victim immediately after her release.

The State then called [illegible]. [illegible] testified that she was working in the Probate Office on the morning of January 14, [illegible]. She stated that she saw Mr. Johns' holding the victim and saw the gun. She then went into the Probate Judge's Office and called for Judge Stone, Probate Judge. She stated that Judge Stone began talking to Mr. Johns', trying to get him to calm down.

On cross-examination, she testified that Mr. Johns' never pointed a gun at Judge Stone.

The State, then called Probate Judge Bill Stone. Judge Stone testified that after he approached Mr. Johns' Mr. Johns' asked him to get Mr. Johns' information off the computer.

During an In-Camera Hearing on a matter of evidence, the Defense observed a Juror pass a note to Judge Stones' Wife., during his testimony or during a break in Judge Stones' testimony. Whereupon, Mrs. Stone was sworn in and testified that the note informed her of a yard sale at the First Baptist Church on April 5th. The Defense made a Motion for a Mistrial, which was Ocvr-ruled.

The State next called Chief Deputy Doug Wheeler. Mr. Wheeler stated that he talked to Mr. Johns' and asked him what was wrong and tried to get him to put the gun down. Deputy Wheeler testified that he ultimately

Probate Office.

On Cross-examination, Ms. Scott admitted that mr. Johns' voluntarily released her after the Sheriff asked him to let her go. without force or threat of force from them to mr. Johns'. The State then rested.

Mr. Johns' took the stand, and testified that he had been previously convicted of several drug offenses. Mr. Johns' further testified that he came to the Court house that day because he had some serious problems with his property and that he wanted some attention. He stated that he had been trying to get these problems straight for several years. he stated that his purpose for grabbing Ms. Scott was to get some attention and that he did not intend to hurt her. Mr. Johns testified that he did not go to the Courthouse to threaten or kill anybody.

On Cross-Examination, the State began to question Mr. Johns exclusively about his responses to his answers on Direct regarding his intentions to not hurt anyone at the Courthouse. The State repeatedly asked Mr. Johns whether he came to the Courthouse to hurt anybody.

The Defense moved to surpress any and all Statements made by Mr. Johns and Moved for a Mistrial because the Jury had heard about the Statement, The Defense perceived the State's direction of questioning and surmised the State was setting Mr. Johns' up for the introduction of a Statement of his that was not revealed or produced in Discovery. The Court Over-Ruled both Motions.

The State called Sheriff Russell Thomas. Sheriff Thomas stated that he took Mr. Johns to his office after he was apprehended and was handcuffed.

Sheriff Thomas stated that he had a conversation with Mr. Johns about the incident, asking him if he wanted family to be called or anyone to be there.

Sheriff Thomas stated, that mr. Johns responded to his question as to whether he regretted how he handled this matter. Sheriff Thomas stated that mr. Johns stated to him, " WELL NO, I came to kill somebody today". The defense reiterated the continuing Objection. The State Rested and the Defense rested.

Whereupon, the Jury was charged and returned with a verdict of Guilty of Kidnapping in the Second Degree and Carrying a Concealed Weapon.

## ARGUMENT

Whether the State's failure to provide the Defense Notice and substance of Johns' Oral statement made to Sheriff Thomas after his arrest, pursuant to RULE 16.1 ALABAMA RULES OF CRIMINAL PROCEDURE, substantially prejudiced the Defense and deprived Johns of a Fair Trial as guaranteed by the Due Process Clause of the Fifth Amendment of the United States Constitution, and the controlling State Laws. YES!!

The ALABAMA RULES OF CRIMINAL PROCEDURE, RULE 16.1 " DISCOVERY BY THE DEFENDANT" provides:

> (a) STATEMENT OF DEFENDANT: Upon written request of the Defendant, the Prosecutor shall, within Fourteen (14) days after the request has been filed in Court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the Court, on Motion, for Good Cause shown:

(1) Permit the defendant to inspect and to copy any written or recorded statements made by the defendant to any law enforcement officer, official or employee which are within the possession, custody, or control of the State/ Municipality, the existence of which is known to the prosecutor; and

(2) Disclose the substance of any oral statements made by the Defendant, before or after arrest, to any law enforcement officer official, or employee which the state/ municipality intends to offer in evidence at the trial. ( Emphasis supplied).

The facts of this case show that the State failed to provide the Defense with Notice of the existence of the Oral Statement of the Defendant, much less the substance of the Oral Statement by the Defendant.

The Defense provided to the State a written request for Discovery entitled " MOTION TO COMPEL DISCLOSURE AND NOTICE TO PRODUCE", being date- stamped and filed by the Clerk of the Court on January 29, 2002. The State responded on or about the 4th day of March, 2002, with, " STATES' FIRST RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY", which was nominated and offered into evidence as " DEFENDANT'S EXHIBIT "1". In the State's response included in paragraph (5) (c) of the following: " The Defendant has not made a statement."

The Rebuttal Testimony from the State's witness, Sheriff Thomas, was that after Mr. Johns had been apprehended, taken into custody, Sheriff Thomas took him to his office and talked with him. Sheriff Thomas spoke to him about his family comming to be with him. Finally Sheriff Thomas testified as follows:

Q. And what did you say to Mr. Johns?

A. One of the last things I said to Charles, I looked at Charles and I said. Charles, don't you regret the way that you handled this? And his response to me was Hell No, I come to kill somebody today.

Mr. Johns was speaking to the Sheriff of the County, the top Law Enforcement Officer in the County and made an Incriminating statement. The State did not deny that the Statement was not produced to the Defense.

After a series of Objections from the Defense and discussion and Argument at the bench prior to the Statement being admitted, the Honorable Court allowed the Statement into evidence.

In order for a Defendant to preserve the issue for appeal, he must make a timely objection to the introduction of the offending evidence in order to allow the Court to prevent or remedy any error. [illegible]. 556 So.2d. 37[illegible] ( ALA. [illegible]); [illegible] VS. STATE, 59[illegible] So.2d. [illegible], [illegible] ( MISS. [illegible]); STATE VS. MOORE, 73[illegible] [illegible], 35[illegible] ( Mo. App. [illegible]); PETTWAY VS. STATE, 607 So.2d. 325 at 331 ( ALA.CR.APP. 1992).

> The requirement of a timely objection simply gives the trial court the opportunity to take corrective action where such action is warranted, see STATE VS. [illegible], 436 So.2d. 605, 612 ( La.App. 1983), and is keeping with standard Trial procedure and evidentiary Rules/ PETTWAY VS. STATE, 607 So.2d. 325 at 332 ( ALA.CR.APP. 1992).

The defense made a timely objection and thorough argument regarding this objection and properly preserved it for review.

In response to the Defenses Objection, the State relied on First, the fact that the Statement was Oral. The State argued that it could not provide a phot-copy of what was in someone's mind. Ostensibly, the State was arguing the statement, not being recorded in any way, and being only in the mind of Sheriff Thomas, was not subject to Discovery.

> Oral statements made by the accused to any law enforcement officer Official, or employee must be disclosed to the accused prior to Trial if the state intends to offer them into evidence at trial. See also: **EX PARTE LAMBERT**, 519 So.2d. 899 ( ALA. 1987), and **GIBSON VS. STATE**, 555 So.2d. 784 at 790 ( ALA.CR.APP. 1989).

It is anticipated that the State will argue in response to this Petition that the Statement was offered in rebuttal to Mr. Johns testimony and would not be subject to Discovery Rules and laws. However, **LAMBERT**, mitigates against that proposition, to wit:

> The state argues that being provided with a statement of the substance of the oral statements would not have aided the Defendant. The rule does not provide for an exception based on whether Discovery of the Statement would aid the Defendant's case. It simply mandates that upon the Defendant's Discovery Motion, " the substance of any Oral Statements" will be provided to him. **EX PARTE LAMBERT**, 519 So.2d. 899 ( ALA.1987).

Further, the State argued that the Statement was made to a Law enforcement Officer and that the State's attorney had no knowledge of the statement until just before Mr. Johns testified. The knowledge of the statements with Law Enforcement is imputed to the prosecutor.

> In the present case, the Appellant specifically requested the Yellow legal pad. Whether the prosecutor knew of the existence of the pad, the knowledge of the law enforcement agents is imputed to the prosecutor. SEE: **PATTON VS. STATE**, 530 So.2d. 886 at 889 ( ALA.CR.APP. 1988): **FULFORD VS. MAGGIO**, 692 F.2d. 354, 358 (5th Cir. 1982), reversed on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d. 794 ( 1983). The information contained in the yellow legal pad was never disclosed to the Appellant or to Defense counsel; thus the evidence was suppressed. **PATTON SUPRA**. Moreover as stated in **U.S. VS. AGURS**, 427 U.S. 97, 96 S.Ct. 2392 (1976) and quoted in **EX PARTE KIMBERLY**, 463 So.2d. 1109, 1111 ( ALA. 1984), "[W]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever excusable." **DUNCAN VS. STATE**, 575 So.2d. 1198 at 1203 ( ALA.CR.APP. 1990).

The Defense made timely [illegible] for discovery, specifically requesting information about Mr. [illegible] statements.

Further, the State has a continuing duty to disclose discoverable material. In the case of __[illegible] Vs. STATE__, (infra), the prosecutor learned of the statement only after the trial started and into the second day. Further, the Defense did [illegible] before the [illegible].

"[illegible] parties to continue to disclose:

"Subsequent to compliance with [illegible] issued pursuant to [illegible] Rule 16.[illegible] or during trial, if a party [illegible] evidence or decides to use additional evidence, which information has been subject to [illegible], that party shall promptly notify the Court, and the [illegible] of the existence of the additional evidence to allow the court to modify its previous order for additional discovery or inspection." __[illegible] Vs. STATE__, [illegible]).

Such was the case at bar. Mr. Johns argues that the continuing duty to disclose [illegible] upon the [illegible] curiosity [illegible] with the law enforcement personnel regarding the events giving [illegible]. In this [illegible], the highest law enforcement officer in the County [illegible] of Mr. Johns [illegible] or apprehension [illegible] verbal communication [illegible] were [illegible] and [illegible] evidence. Without [illegible] upon the character of the very Honorable Mr. Marshall [illegible] and legal practitioner for many years in Pike County, [illegible]

Great State, it would seem to [illegible] credulity that in his investigation and preparation for this trial, that there surely were conversations between himself and the Sheriff, but, there was no mention by the Sheriff to the Prosecutor of such a statement by [illegible].

[illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] at trial. [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] EX PARTE [illegible] [illegible] [illegible] [illegible]

If that were not [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] for use [illegible] [illegible] [illegible] [illegible] [illegible] Discovery would [illegible] [illegible] [illegible] [illegible] [illegible]

The Defense does not make an argument under BRADY VS. MARYLAND, 373 U.S. 83, 83 S.Ct. 1194 (1963). [illegible] [illegible] [illegible] [illegible] by Sheriff Thomas were not [illegible] [illegible] [illegible] [illegible] [illegible] charged. [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] witnesses, as well as [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] acting out of [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] Defense [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] place, [illegible] [illegible] [illegible] [illegible] were [illegible] [illegible] [illegible] [illegible] [illegible] the effect [illegible] [illegible] [illegible] [illegible] [illegible] by Sheriff Thomas, were severely prejudicial [illegible] [illegible] [illegible] the [illegible] [illegible] [illegible]

Mr. Johns was faced with a range of punishment from between 20 yeaRS TO Life in the Penitentiary.

**CODE OF ALABAMA, 1975** § 13A-5-9 provides that:

> (c) In all cases when it is shown that a criminal defendant has been previously convicted of any Three Felonies and after such convictions has committed another felony, he or she must be punished as follows:
>
> (2) On a conviction of a Class B Felony, he or she must be punished by imprisonment for life or any term not less than 20 years.

Mr. johns submits that his entire defense was prejudiced by his lack of Notice of Information regarding the statements testified to by Sheriff Thomas. The Prejudice was manifest in the sentence issued by the Honorable Judge Head. He received the Maximum sentence, where there were no injuries and relatively little disturbance in the scene of the crime. The incident lasted less than 15-20 minutes.

Further, Mr. Johns may have reconsidered his insistence on a trial, and negotiated a Plea Bargain for much less time that what he received, had he known that Sheriff Thomas would testify as he did.

> There is authority that evidence which is both favorable and unfavorable to the Defendant must be disclosed under **BRADY AND SELLERS VS. ESTELLE**, 651 F.2d. 1074, 1077 ( 5th Cir 1981), but this, requirement does not include inculpatory evidence. **UNITED STATES VS. COCHRAN**, 697 F.2d. 600, 605 (%TH Cir. 1983) **EX PARTE DICKERSON**, 517 So.2d. 628 at 630 ( ALA. 1987).

The law is clear that the Court has the discretion in determining a Fair remedy for the introduction of newly discovered evidence. This Court can allow a continuance to allow the defenses to prepare for the statement or, if warranted, exclude the evidence. Most severely, the Court can declare a Mistrial. Mr. Johns argues that the introduction of the alleged statements that he made were so highly prejudicial as to probably affect the outcome

of the trial.

CONCLUSION

Mr. Johns submits that the rules are explicitly clear, and the law is well settled in that the state is required to provide the Defense Notice and substance of all relevant and material and favorable or unfavorable statements by the Defendant, whether those statements are recorded in any form or made orally and remain only in the consciousness of a human being.

Further Mr. Johns argues and states that he was substantially prejudiced by the surprise revelation of his alleged statement to Sheriff Thomas. The Substance of the alleged statement had the effect of eviscerating any mitigation or potential explanation that he had for his actions on that day. Mr. Johns submits, that the trial Court erred in allowing his alleged statements into evidence over timely and properly preserved objections.

For these reasons so stated, this Petition for Writ of Certiorari is due to be Granted.

Respectfully Submitted,

DATED: APRIL 1, 2004

CHARLES K. JOHNS
APPELLANT PRO-SE
VENTRESS CORRECTIONAL FAC.
P.O. Box 767
Clayton, Alabama 36016-0767

CERTIFICATE OF SERVICE

I hereby certify that on this the 1 day of April, 2004, that I have placed 10 copies of the foregoing PETITION FOR WRIT OF CERTIORARI in the Institutional Mailbox at Ventress Correctional Facility with First Class Postage affixed and properly addressed as follows:

HONORABLE ROBERT G. ESDALE SR
CLERK OF THE COURT
ALABAMA SUPREME COURT
300 Dexter Avenue
Montgomery, Alabama [illegible]

Charles K Johns
CHARLES K. JOHNS