IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2006 JUL 31  A 10: 00

CHARLES KELVIN JOHNS,        *
                             *
        Petitioner,          *
                             *
    v.                       *        CIVIL ACTION NO. 2:06-CV-229-WHA
                             *
J. C. GILES, et al.,         *
                             *
        Respondents.         *


## PETITIONER'S RESPONSE

Comes now the Petitioner, Charles Kelvin Johns, and files this Response. Respondents filed a supplemental Answer to Petitioner's Federal Habeas Corpus Petition on May 15th, 2006.

Respondents contend that Petitioner is **not** entitled to relief from this Court because the claims raised by Petitioner are based on state law, not the United States Constitution.

Petitioner avers this assertion by Respondents is false.  In support of Petitioner's averment Petitioner submits argument and supporting authority for each claim that has been submitted in the Habeas Petition.

Petitioner also renews the Case Summary and Facts of the original Petition.


## GROUND ONE

The Trial Court erred by admitting into evidence a statement alleged to be made by Petitioner in violation of the U.S. Constitutional Amendments Five, Six, and Fourteen, for four reasons:

    (1)  Petitioner never made a statement, oral or written.

    (2)  The alleged statement was ellicited by law enforcement before
         Petitioner was Mirandized.

(3)   The prosecution failed to disclose to the defense before trial
that Petitioner made any statement.

(4)   The Trial Court failed to instruct the jury that the statement
could not be used to determine the Petitioner's guilt or intent
but could only be used to determine Petitioner's credibility.

## FICTITIOUS STATEMENT

Petitioner asserts this alleged statement is in fact fictitious, and
that he never made any type of statement. The Prosecution realized at its
close of evidence that Petitioner could not be legally convicted of Kid-
napping in the First or Second degree because the evidence presented
clearly and convincingly showed that Petitioner had not abducted the victim
with "intent to do serious physical injury," "threaten anyone or the victim,"
"hold her for ransom or reward," "shield or hostage," "accomplish or aid
the commission of a felony or flight therefrom," "inflict physical injury
or violate her sexually," "terrorize her or a third person" or "interfere
with the performance of a governmental or political function."

A conviction obtained through false evidence must fail, **Mooney v.
Holahan**, 294 US 103. Therefore, the elements of Alabama's Kidnapping
statutes had not been satisfied causing an exigent need to manufacture
evidence of abduction coupled with intent, in order to satisfy Second Degree
Kidnapping to obtain Petitioner's conviction.

Sheriff Russell Thomas, Pike County's number one law enforcement
official, had already testified to give his account of the events of
the day that Petitioner entered the courthouse and abducted the victim,
including how Petitioner was handcuffed at the time he was arrested. Not
once did the sheriff mention that Petitioner made a statement to him.

However, at the point that the Prosecution become knowledgable of Petitioner's testimony that he did not intend to harm anyone "which is indisputably supported by the evidence." The Prosecutor, a very seasoned attorney and jurist for many years, called the sheriff back to the stand to rebut Petitioner's testimony by giving testimony that Petitioner had made a statement to him "he had to come to kill somebody."

Petitioner avers this entire scenario was a very carefully planned maneuver by the Prosecution to give the jury abduction coupled with intent to obtain the Second Degree Kidnapping conviction.

Petitioner again avers that he never made any type of statement, moreover, never intended to harm anyone. This Court should consider that Petitioner was armed with a .32 caliber revolver at the time he abducted the victim, and therefore, could have caused serious injury or even death to not only the victim, but others, if he so intended. Therefore, for Petitioner to have made such a statement would have certainly contradicted his actions on the day that he committed his crimes, and simply makes no sense at all.

The manufacturing and introduction of this alleged statement amounts to nothing more than a very severe and prejudicial act of prosecutorial misconduct to obtain a conviction of a crime in which the Petitioner did not commit of Second Degree Kidnapping.

## MIRANDA VIOLATION

In **Mincey v. Arizona,** 437 US 385, the Supreme Court held that while statements made by a defendant violating the strictures of **Miranda** may be used for impeachment if their "trustworthiness" satisfies legal standards. See **Harris v. New York,** 401 US 222. Any criminal trial use against a defendant

of his involuntary statement is a denial of due process of law.

Petitioner avers that alleged statement, if true, would have been in-voluntary. In **Henry v. Kernan**, 197 F3d 1021, the Ninth Circuit explained that for a Petitioner to prevail on a Fifth Amendment claim he must demonstrate that:

(1) His statements were obtained by police in violation of **Miranda**.

(2) The State Court committed error in permitting the Prosecution to use the improper statements; and

(3) The error had a harmful and substantial influence on the jury's determination of its verdict. See **Pope v. Zenon**, 69 F3d 1018, 1020 (9th Cir. 1995).

In demonstrating this correct analysis Petitioner shows as follows:

(1) The Prosecution admitted at trial that Petitioner was "under arrest," and "in custody" at the time this alleged statement was made. Even further admitted that not only had Petitioner not been Mirandized at the time the statement was alleged to have been made, but was also elicited by Pike County Sheriff Russell Thomas when he asked Petitioner, "Charles, don't you regret the way you handled this situation?"

These facts and circumstances considered, this Court can only determine that the alleged statement was a violation of the Fifth Amendment to the U.S. Constitution under **Miranda**.

(2) The State Court was in error for admitting this statement for the jury to consider not only because of the obvious **Miranda** violations but also under **Brady v. Maryland**.

Because the prosecution failed to disclose the alleged statement before trial, and the statement was fabricated, violating again the U.S. Constitut-ional Amendments Six and Fourteen, causing Petitioner to receive a very unfair trial as a result.

(3) Petitioner also avers that this fabricated statement caused a severly harmful and substantial influence on the jury's verdict due to the fabricated alleged statement seemingly making Petitioner to give perjured testimony. But, also this alleged statement was the only evidence that the jury could have considered that Petitioner had came to the courthouse to cause harm to anyone. The Court failed to instruct the jury that the alleged statement could only be used to go to Petitioner's actual credibility, not guilt or intent. See **Harris v. New York**, 401 US 222.

By the jury being allowed to consider this alleged statement, the way that they did, allowed them to use the alleged statement for the purpose of guilt, and intent to satisfy the Kidnapping in the Second Degree statute, which must be more that just abduction, or the restraining of the liberty of another. This amounts to very substantial and very harmful improper influence on the jury's verdict. Without this alleged fabricated statement there would have been no verdict of guilty for the jury to even remotely consider under Alabama's Kidnapping Statutes in the First or Second Degree. Therefore, forcing a mandatory Unlawful Imprisonment as an instruction from the Court.

In **Henry v. Kernan**, the Ninth Circuit further explained that post-Miranda confessions which are found to be involuntary may not be used for any purpose, including impeachment. See **United States v. Polano**, 93 F3d 555, 560 (9th Cir. 1996). Even further, the State should not be permitted to use post-Miranda statements where the officers set out to deliberately violate a suspects Miranda rights, and the evidence obtained in violation of Miranda is used to prove defendant's guilt, even though it is admitted

in the guise of impeachment.  Thus the Trial Court errs in permitting the
use of post-Miranda statements for the truth of the matter asserted, as well
as impeachment as a prior inconsistent statement.

Petitioner asserts that this Court should review the record of this
case, the filings to this Court, and specifically the trial testimony of
Sheriff Russell Thomas, to determine that Petitioner's Fifth Amendment
rights have been violated under **Miranda v. Arizona**, and the U.S. Constitut-
ional Amendments Five, Six, and Fourteen.


### BRADY VIOLATIONS

The Prosecution failed to disclose to the defense before trial that
Petitioner made any type of statement.

Petitioner's trial attorney filed a motion for discovery pursuant
to Rule 16.1 of the Alabama Rules of Criminal Procedure, in which a specific
request was made for any statements which were made by the Petitioner following
his arrest, oral written or recorded.

The **ALABAMA RULES OF CRIMINAL PROCEDURE, RULE 16.1, DISCOVERY BY THE
DEFENDANT** provides:

(a)  STATEMENTS BY DEFENDANT.  Upon written request of the Defendant,
the Prosecutor shall, within fourteen (14) days after the request has been
filed in court as required by Rule 16.4(c), or within such shorter or longer
period as may be ordered by the court, on motion, for good cause shown:

> (1)  Permit the Defendant to inspect and to copy any written or
> recorded statements made by the Defendant to any law enforcement
> officer, official, or employee which are within the possession,
> custody, or control of the State/Municipality, the existence of
> which is known by the Prosecutor; and

(2)  Disclose the substance of any oral statements made by the Defendant, before or after arrest, to any law enforcement officer, official, or employee which the State/Municipality intends to offer in evidence at the trial.  (Emphasis added).

Petitioner avers the State of Alabama Rules of Discovery are governed by **Brady v. Marylan** and this argument is supported by the Fifth Amendment to the U.S. Constitution and Rule 16.1, A. R. Cr. Pr.  COMMITTEE COMMENTS

Until the United States Supreme Court decision in **Brady v. Maryland**, 373 US 83, Alabama courts had followed the common law tradition, and had not favored discovery by the defense in criminal cases.

Petitioner shows that the Prosecutor in this case violated the Alabama Rules of Discovery and the Fifth Amendment to the U.S. Constitution by not disclosing to Petitioner, before trial, this alleged statement that was used under the guise of impeachment, but allowed the jury to determine Petitioner's possible guilt, and or intent, violating Petitioner's right to a fair trial as set forth in the Sixth Amendment and U.S. Constitutional Amendments Five and Fourteen.

The Prosecutor at trial argued that Petitioner is the person who made the statement.  Therefore, he should have known of its existence and therefore, was not discoverable.  However, Petitioner avers the statement is in fact fictitous, therefore he could not have known that the sheriff would take the stand to commit perjury.  Petitioner shows that this standing is actually irrelevant under the holding in **United States v. Quananilla**, 193 F3d 1139.

In **United States v. Burr**, 8 US (4 Cranch) 470, 480, Chief Justice John Marshall stated that one accused of a criminal offense has the right, under the Sixth Amendment, to be informed of the nature of the accusation against him, and of such information as would enable him to prepare a defense.

The Prosecution at trial also argued that he did not know of the existence of the alleged statement until Petitioner had given testimony of his intentions on the day of the crime, when he, the "Prosecutor" asked someone to step outside to ask the sheriff if Petitioner had made any statement to him (emphasis added).

Petitioner asserts that a Prosecutor, attorney, and jurist of the caliber of the Honorable Mr. McAliley certainly would have at the very minimum taken appropriate investigative measures in the preparation of this case for indictment and trial by questioning the witnesses of the crime, which would have included Sheriff Russell Thomas, the second law enforcement officer on the scene, and the "arresting officer."

Mr. McAliley certainly had knowledge of the way Petitioner was hand-cuffed after he was arrested. It would seem a bit "farfetched" to even remotely consider that Mr. McAliley did not know that Petitioner had made a statement to the sheriff after arrest that he had "come to kill someone." This scenario seems to stretch credulity.

The Prosecutor and sheriff, as administrators of the law, work in close proximity on a daily basis concerning crime and defendants. Petitioner finds it unbelievable that they would not have discussed the facts of this case before indictment and trial.

This Court should also consider the fact that there were no incidents or police reports of this case, and all witnesses refused to speak with the defense counsel about this case. This is to include all law enforcement personnel, specifically Sheriff Russell Thomas. A request for preliminary hearing was refused.

On January 29th, 2002 Defense Counsel Thomas Brantly filed a "Motion to Compel Disclosure, and Notice to Produce." The State responded on March 4, 2002 which was offered into evidence at trial as Defense Exhibit 1, where the State responded by clearly stating: "The Defendant has not made a statement."

Under circumstances such as these, absolutely no statements would ever be intended for use at trial, "IF" the Court's stand idly by to allow such errors to go unnoticed, subsequently allowing prosecutors to abuse discovery and the principles of **Brady.**

Petitioner shows that the alleged statement that was used against him at trial was in fact discoverable, even though as the State has correctly shown, it is inculpatory. Petitioner further shows that the alleged statement was used as guilt, and allowed for punishment increase by the arrangement of time imprisonment imposed between the crimes under the Kidnapping statutes in the First or Second Degree, and also the crime of Unlawful Imprisonment in the First Degree. A misdemeanor punishable by incarceration of up to one year, and the State could not have reached it's burden of proof of the Kidnapping statutes without this alleged statement.

In **Paradis v. Arave,** 240 F.3d 1169 (9th Cir. 2001), the Ninth Circuit explained that under **Brady** the Prosecution has a constitutional duty to disclose exculpatory evidence  to a criminal defendant if it is "material" to either guilt or punishment, **Brady,** 473 US 1487, 83 S. Ct. 1194. This obligation extends to impeachment evidence. **United States v. Bagley,** 473 US 667, 676, and to evidence that was not requested by the defense. See also **United States v. Agurs,** 427 US 97, 107, 108 evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." A "reasonable probability is a probabilty" sufficient to undermine confidence in the outcome. **Bagley,** 473 US at 682.

Petitioner also shows that had he known that the sheriff would take the stand and perjure himself by giving testimony that the Petitioner had said he had come to kill someone, then there would have been different preparations for trial, possible Petitioner's defense may have negotiated a settlement with the State and/or not allowed Petitioner to testify at trial.

Petitioner avers this Court should consider that harmful effect the withholding of the alleged statement placed on the jury's verdict, and the prejudice in which Petitioner has suffered from the error of the Trial Court, for allowing the alleged statement to be placed into evidence. Then issue on Order containing specific language concerning Petitioner's constitutional rights under the 5th, 6th, and 14th Amendments to the United States Constitution. Specifically, **Brady v. Maryland**, and other applicable case law cited herein.

### JURY INSTRUCTION

Upon arguments from Petitioner's defense at trial concerning the admission of the alleged statement, the Trial Court should have instructed the jury that said statement could only be used to allow the jury to consider Petioner's credibility at trial, not guilt or intent.

Petitioner's entire defense strategy was aimed at mitigating his actions concerning his crimes, and an instruction concerning credibility certainly would have not caused the Prosecution any prejudicial effects, if in fact, this alleged statement was only being used for impeachment purposes, "which the Petitioner strenuously asserts was not."

Then the minimum cursory action the Trial Court should have taken was to instruct the jury on the credibility and impeachment charge, and therefore giving the explanation of the State's intended purpose of the introduction.

Rather than use the statement in an improper manner, subsequently the Trial Court erred by failing to instruct the jury concerning this alleged statement.

This Court should consider the totality of the circumstances upon reviewing the fabrication illicitation, withholding, and use of this alleged statement, along with the circumstances in which it was admitted, and then determine Petitioner's argument to be correct, reverse this case due to the

obvious seriousness of the constitutional violations stated herein.

Petitioner's due process rights have been violated by the Prosecution and subsequently the Trial Court rendering his trial fundamentally unfair in violation of the United States Constitution, specifically Amendments 5, 6, and 14. This issue was intentionally improperly raised on direct appeal.

## GROUND TWO

### UNCONSTITUTIONAL INDICTMENT

Petitioner was unconstitutionally indicted for a crime upon which the statutory laws of the State of Alabama prohibit a conviction or charge, and therefore, an indictment of Kidnapping in the First Degree was not warranted.

The indictment for Kidnapping in the First Degree could have only been obtained under false pretense, fictitious swearing, misreading of the statute, withholding from the grand jury portions of the statute and/or some other form of malicious prosecutorial misconduct.

The evidence at trial should have been the same as indictment, but could not have been.

**Shihweisu v. Filion**, 335 F. 3d 119 (2nd Cir. 2003). The Prosecutor is an officer of the Court whose duty is to present a forceful and truthful case to the jury, not to win at any cost.

Petitioner asserts that the indictment for the First Degree Kidnapping charge caused his defense to be undermined because they were forced to defend at trial a charge in which Petitioner could not be convicted, rather than concentrate on Petitioner's proper defense of Second Degree Kidnapping or the lesser included offense of Unlawful Imprisonment.

13A-6-43 KIDNAPPING: FIRST DEGREE

(A) A person commits the crime of kidnapping in the first degree, if he abducts another person with intent to:

(1) Hold him for ransom or reward; or

(2)  Use him as a shield or hostage; or

(3)  Accomplish or aid the commission or any felony or flight therefrom; or

(4)  Inflict physical injury upon him, or violate him sexually; or

(5)  Terrorize him or a third person; or

(6)  Interfere with the performance of any governmental or political function.

(B)  A person does not commit the crime of kidnapping in the first degree if he voluntarily releases the victim alive, and not suffering from serious physical injury, in a safe place prior to apprehension.  The burden of interjecting the issue of voluntary safe release is on the defendant, but does not shift the burden of proof.

13A-6-43 COMMENTARY

The criminal code provides that there is no kidnapping in the first degree if the defendant prior to his apprehension voluntarily releases the victim alive, safe, and not seriously harmed.  13A-6-439b).  This is a feature of many modern criminal codes, and is justified as affording some encouragement to the kidnapper to not kill or seriously harm the victim.

The Alabama Legislature did not allow for the Prosecutors to construe which defendants this subsection "should be" or "not be" applied to, and the language of the statute is clear, that, if the defendant met the criteria of releasing the victim alive, safe, not seriously injured, and prior to his apprehension, he is not to be charged, indicted, or tried for kidnapping in the first degree.  The issue of voluntary safe release is on the defendant, however "prior to apprehension it not," which is clearly demonstrated by the language of this statute.  The Legislature must have predicted that a prosecution and/or court would know the meaning of apprehension.

In this case, the victim, the sheriff, and the captain of Pike County gave trial testimony of Petitioner's crime and surrender, in which each stated that:

(1)  Petitioner did not hold the victim for ransom or reward.

(2)  Use her as a shield or hostage; or

(3)  Use her to accomplish or aid the commission of any felony or flight therefrom; or

(4)  Inflict physical injury upon the victim or violate her sexually; or

(5)  Terrorize the victim or any other person; or

(6)  Intend to interfere with any governmental or political function.


Therefore, not one element of First Degree Kidnapping was satisfied, and therefore, the Prosecutor knew that Petitioner was incorrectly charged and indicted.

The victim, sheriff and captain of Pike County Sheriff's Department further testified that:

(1)  Upon arrival of law enforcement Petitioner placed his weapon on the gloor, and surrendered, no promises were made to the Petitioner other than he would be better off to let the victim go at that time, no weapons were drawn, or threats made.  And:

(2)  The victim was alive.  And:

(3)  Not injured.  And:

(4)  That the Pike County Courthouse is a safe place.  And:

(5)  That Petitioner was not apprehended when he released the victim.

(6)  THat Petitioner was not attempting to interfere with any governmental or political function.

The Prosecutor in this case prepared for the indictment, and trial solely upon the victim and other eyewitnesses testimony, which included the top two law enforcement officers of Pike County.  There were no police or incident reports ever made, and no preliminary hearing.  Therefore, the Prosecution had full and complete knowledge that Petitioner's crime was less that Kidnapping in the First Degree.

The record clearly shows that the Prosecution, and Trial Court allowed the jury to define apprehension, because the Legislature did not.  Therefore,

the Court had a duty to define apprehension in favor of the Petitioner by giving the plain, ordinary meaning, "which means" arrest, or take into custody.

It is absolutely clear from the record what the Prosecution knew before indictment and trial, in which, the Petitioner released the victim before he was arrested or taken into custody.

A statutes clarity must favor the defendant. **U.S. v. Lanier**, 73 F3d 1380.

A statute is vague if a layman can't understand its definitions. **US. v Balint**, 201 F 3d 928.

Petitioner shows that the jury confirmed what legally trained tacticians in this case had to have known before indictment and trial. Petitioner released the victim before he was apprehended.

The Trial Court at the close of evidence was convinced that voluntary, safe release was completely satisfied, but because the Trial Court, and Prosecution could not agree on the Legislature's intent or definition of apprehension, the Trial Court erroneously allowed the First Degree Kidnapping charge to go to the jury to determine the intent or definition of apprehension. Petitioner shows that this is the duty of the "court," and not the "jury." The questions of law are on the Trial Court for interpretation, not the jury.

No man of ordinary character could possibly consider the facts of this case, and reasonably believe the Petitioner was arrested before he released the victim. "This is clearly    supported by the evidence, and the jury." Therefore, Petitioner finds it very unrational to believe a legally trained mind could not make the proper determination and definitions to charge the Petitioner indict, and try him.

However, this is what the Prosecution and Trial Court has improperly done to obtain this conviction.

Petitioner poses the question this Court should carefully consider.

**WHY?**

Robert Barr, a circuit judge in Pike County, is the only judge who would sign the indictment against Petitioner, which poses a very real and ethical question in the illegal obtainment of the unwarranted First Degree Kidnapping indictment.

Circuit Judge Robert Barr's heirs stole property from Petitioner's heirs in the early and mid 1900's. H. S. Barr, and the unborn of the unborn heirs were sued in 1960 by the Attorney General over this stolen property. Robert Barr is the heir to that suit. See Case Summary and Supporting Facts. And Exhibit "A."

This property was stolen and sold by Robert Barr's heirs to the many Plaintiffs in that suit. Also sued was Brundidge, Alabama Mayor J. T. Rammage's heirs, J. T. Rammage l and the unborn of the unborn. Brundidge, Alabama Mayor J. T. Rammage lll is the heir to J.T. Rammage l.

In this lawsuit in property was to be returned to it's rightful owners, which is Petitioner's heirs. However, it has never been returned. Therefore, these heirs, Robert Barr and J. T. Rammage III are as of this date profitting from this stolen property, "which is substantial."

These two individuals used their political influence and public offices to obtain the unwarranted First Degree Kidnapping charge and the indictment.

This injustice was done in order to allow Petitioner to be convicted and punished for the maximum, to stop Petitioner's quest to obtain the property that he is rightful heir to "life imprisonment was imposed."

If a person is tried upon First Degree Kidnapping and there is a reasonable probability that he could be convicted on the lesser included offense of Second Degree Kidnapping, then the jury must be instructed on the lesser charge also.

If a person is tried on Second Degree Kidnapping and there is a reasonable probability that he could be convicted on the lesser included offense of Unlawful Imprisonment in the First Degree, then the jury must be instructed on the lesser charge also.

The entire reasoning for the illegal unconstitutional indictment for First Degree Kidnapping to be obtained was solely to present Petitioner from receiving jury instructions of Unlawful Imprisonment I. Had Petitioner been legally indicted for Kidnapping in the Second Degree, then Unlawful Imprisonment in the First Degree would have been mandatory, and, the Petitioner would still be a threat to pursue his property rights.

By this scenario of Petitioner being unconstitutionally indicted, Robert Barr and J. T. Rammage have successfully prevented Petitioner from being able to pursue his property rights, and to continue their criminal enterprise by using their public offices for private gain by judicial influence and Judge Barr signing the illegal unconstitutional indictment.

Petitioner subsequently received Life Imprisonment by his defense against the crimes he should have been charged, indicted and tried upon being undermined by the illegal unconstitutional indictment of Kidnapping in the First Degree, to prevent the Unlawful Imprisonment instruction from being mandatory.

Petitioner shows that the maximum warranted charge or indictment that could have legally, and constitutionally obtained would have only been Second Degree Kidnapping, and the evidence at trial clearly supports this theory.

The State of Alabama can produce no evidence whatsoever that would contradict this theory.

Petitioner requests this Court make a thorough investigation into the Grand Jury minutes of this case to determine the validity of the indictment.

The fact that Circuit Judge Robert Barr signed the illegal indictment against Petitioner for a crime in which the laws of the State of Alabama

do in fact prohibit a charge, indictment and conviction, combined with a very real conflict of interest between Petitioner, his heirs and Circuit Court Judge Robert Barr and his heirs poses a very substantial ethics question on this entire case and prosecution, in which Petitioner avers was tactically derived from the illegal unconstitutional indictment of First Degree Kidnapping in violation of the Sixth Amendment to the United States Constitution, and was strictly preconceived to deprive Petitioner of his property rights.

Petitioner respectfully requests this Court carefully consider the indictment and evidence presented against him at trial.  Then review the Alabama Kidnapping in the First Degree statute, and it's subsections and commentary by the Legislature, and enter into a judgment that this case be reversed or any other remedy as justice shall require.

This issue should have been raised by trial counsel before trial, but was not, and should have been raised on direct appeal but was not.


### GROUND THREE

### INSUFFICIENT EVIDENCE

The evidence does not support the conviction of Kidnapping in the Second Degree.

For a conviction of Kidnapping in the Second Degree to be obtained under Alabama law, a person must abduct another person and the abductor must intend to use or threaten to use deadly force upon the abductee or another person.  The mere presence of a weapon does not in itself constitute intent or a threat.

At the close of the Prosecution's case there was absolutely no evidence to support that Petitioner intended to or threatened to use deadly force upon the abductee or any other person when he abducted the victim.

In fact, the evidence is to the contrary.

**13A–6–44  KIDNAPPING IN THE SECOND DEGREE**

(A)  A person commits the crime of kidnapping in the second degree if he abducts another person.

(B)  A person does not commit a crime under this section if:

    (1)  The abduction is not coupled with intent to use or to threaten to use deadly force.

    (2)  The actor is a relative of the person abducted, and

    (3)  The actors sole purpose is to assume lawful control of that person.

The burden of injecting the issue of defense under this subsection is on the defendant, but this does not shift the burden of proof.

The evidence in this case clearly supports abduction, and Petitioner's trial testimony made clear that he was the abductor.  However, there was no evidence presented to satisfy a threat or intent to use deadly force. Petitioner stated under oath that he was acting out of duress over the problems with Pike County official's refusal to allow him a legal description of the property his family has owned over a century, strictly attempting to get some attention brought to the officials through his misconduct and Petitioner was not attempting to harm anyone.

In fact, the victim is someone Petitioner has known since childhood, and knwe she was not in anyway involved in the conspiracy involving his property.  Therefore, he would have no reason to harm her, and the victim's testimony not only points this specific fact to be true,  but also shows that Petitioner did not intend to or threaten to harm her in any way.

The only evidence that was presented at trial was the fabricated statement that was erroneously admitted for the jury to consider, "that Petitioner had came to kill someone."  The issues of this statement are heavily argued in Ground One of this response and these issues, and grounds are argued in reference to one another.

Petitioner respectfully requests this Court should consider the evidence presented at to make the determination that no threat was made, and Petitioner did not intend to harm the victim, or any other person, and reverse this case because as the Trial Record reflects, the evidence in this case does not support Alabama's Kidnapping in the Second Degree statute.

The jury in this case was only instructed on First Degree and Second Degree Kidnapping. Therefore, with the Petitioner admitting he was the abductor of the victim, they made a guilty determination because they were not instructed on the lesser included offense of Unlawful Imprisonment in the First Degree, and this Court should carefully consider this argument in reference to Grounds One, Two, Four and Five due to their similarity and support of one another.

**GROUND FOUR**

**JURY INSTRUCTIONS**

The Trial Court erred by refusing to give jury instructions on the lesser included offenses associated with Kidnapping in the Second Degree.

**U.S. v. Yazz**, 188 F.3d 1178 (10th Cir. 1999)

Four criteria for determining entitlement to instruction on lesser included offenses are:

(1)   A proper request.

(2)   The lesser included offense contains some but not all of the elements of the offense charged.

(3)   The elements differentiating the two offenses are in dispute, and

(4)   A jury could rationally convict defendant of the lesser included offense, and acquit on the greater.

In applying this analysis, Petitioner shows as follows:

(1)   Petitioner's trial attorney made a proper request regarding Unlawful Imprisonment in the Fist Degree as a lesser included offense of Kidnapping in the Second Degree.

Page 19

(2)  The lesser included offense of Unlawful Imprisonment does contain some but not all of the elements of Kidnapping in the First and Second Degree and reads as follows:

### 13A-6-41    UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE

(A)  A person commits the crime of Unlawful Imprisonment in the Degree if he restrains another person under circumstances which expose the latter to a risk of serious physical injury.

(B)  Unlawful Imprisonment in the First Degree is a Class A Misdemeanor.

(3)  Petitioner avers that not only could the jury have rationally convicted on the lesser offense of Unlawful Imprisonment, but would have done so, because this is the only charge the Petitioner shows this Court actually fits his crime.

Both First and Second Degree Kidnapping use the word "abduction" which means to restrain the liberty of another by force or physical action, or to carry away.

Petitioner shows this Court that the evidence in this case clearly demonstrates that Petitioner grabbed the victim at the entrance of the Courthouse, that Petitioner possessed a gun, and that he asked the victim to walk with him to the Probate Office, inside the Courthouse, down the hall, only a few feet away.

Petitioner did not remove her from the building in which she was at when he grabbed her, nor did he attempt to hide her.  The Petitioner never actually removed her, "the victim," from the general location in which he had taken control of her liberty.  This entire event only lasted minutes.

Petitioner avers that under the reasonable theory doctrine he not only could have been convicted by his jury upon the lesser included offense of Unlawful Imprisonment in the First Degree, but in fact would have been, and that the  Trial Court violated the United States Constitutional Amendments

5, 6, 14 for failing to give the lesser instruction, and this case should be reversed for this reason.

This issue is similarly argued and supported by Grounds One, Two, Three, and Five and substantially rely on one another.

**GROUND FIVE**

The Trial Court was without jurisdiction to render the judgement or impose the sentence.

As argued and supported in Ground Two of the Response, Petitioner was indicted for First Degree Kidnapping unconstitutionally, erroneously, and intentionally creating a structural defect.

The State was prohibited from charging, indicting and trying Petitioner for First Degree Kidnapping specifically by the Legislature's intent of the Kidnapping statutes subsection (B). Therefore, the indictment against Petitioner is fatally defective.

This fatally defective indictment was sought by the prosecution to prevent proper jury instructions on the lesser included offenses associated with Second Degree Kidnapping. This argument is supported by Grounds Two, Three, and Four of this response and Petitioner request this Court review the issues in these grounds separately, combined, and in support of one another. Each is extensive. However, very necessary is order to demonstrate the amount of misconduct that the official's involved in this case, and Petitioner's property interest would go to be sure that Petitioner received the maximum punishment for his crimes, to prevent Petitioner from ever again possibly pursuing his rightful property interest in Pike County, Alabama and exposing the officials of this county's criminal enterprise.

Petitioner received a life sentence for a crime that the evidence clearly shows only warranted one year of incarceration.

This case should be reversed and remanded for this reasoning stated herein, with specific Court instructions that Petitioner be indicted and

retried for Second Degree Kidnapping, and that the lesser included offenses of Unlawful Imprisonment, and/or Menacing and/or Reckless Endangerment be mandatory.

This Court should carefully consider the fact that Petitioner's defense was unaware that the lesser charge of Second Degree Kidnapping would be given for the jury to consider until after the close of evidence, immediately before closing arguments, and instructions. Therefore, the defenses against the Second Degree Kidnapping charge were never contemplated or attempted throughout the trial.

### GROUND SIX

Ineffective assistance of counsel by Attorney Brantly at trial and appeal and ineffective assistance of Attorney Claunch on appeal.

### ATTORNEY BRANTLY AT TRIAL

Attorney Brantly failed to attack the indictment before trial of First Degree Kidnapping.

Before trial attorney Brantly had complete knowledge that the evidence of Petitioner's crime did not support a charge or indictment for First Degree Kidnapping and therefore, had a constitutional duty to raise this issue before trial, but failed to do so.

This inaction by Attorney Brantly caused severe prejudice to the defense against the actual crime in which Petitioner should have charged, indicted and tried of Second Degree Kidnapping. Invoking the mandatory lesser included associated with the Second Degree charge, in which the jury could have reasonably convicted Petitioner, or at the very minimum preserved and raised the issue on appeal properly.

During trial the State fictitiously alleged that Petitioner made a statement to the Pike County Sheriff Russell Thomas in response to improper questioning before Petitioner was marandized.

Page 22

Attorney Brantly failed to properly raise this issue to the Trial
Court for suppression of the alleged statement as a Miranda violation,
which would have at the bare minimum preserved the issue for appeal.

Attorney Brantly also failed to properly raise to the Trial Court
the alleged statement could not be used for any purpose whatsoever. Because
it would have been admittedly involuntarily made, "if in fact it would
have actually been made," which Petitioner avers it was not. "Petitioner
maintains this alleged statement is in fact fictitious" and improperly
raised to the Trial Court as a state procedural rules violation instead
of Miranda and Brady.

This ineffectiveness by Attorney Brantly at trial has prejudiced
Petitioner not only at trial but also on direct appeal, by not preserving
the issues for appeal. This has caused Petitioner to serve a much more
lengthy sentence as a result.

Petitioner avers that under the Sixth Amendment to the U.S. Const-
itution Mr. Brantly had an absolute duty to bring to light the facts and
circumstances leading up to Petitioner's crimes but failed to do so.

This Court should consider the fact that the entire reasoning for
Petitioner to do what he did, regardless of the intent, was due his in-
ability of obtaining what every American property owner has an absolute
right to, which is a legal description of the property he owns, and
the absolute right to inherit the property by succession from his fore-
fathers through probate.

Petitioner shows that through several years of denial of this absolute
right from Pike County's Tax Assessor, Probate Judge, other officials and
his exhaustion of most of his financial resources through attorneys, that
did not provide him with a legal description, survey, and probate of said
property, as promised. He became frustrated, and did in fact go to the

courthouse as a result of the stress, and was strictly attempting to get some attention. Petitioner admits his actions were inappropriate. However, he shows that had the jury known the complete facts and circumstances leading up to the day he committed his crimes, and the officials involved, then the jury could have made a reasonably fair conclusion of Petitioner's intended purpose of doing what he did, which was solely to get attention. (Emphasis added).

Attorney Brantly, the Prosecution, and the Court refused to allow the Petitioner to give a full account of events, and facts leading up to Petitioner's acting as he did. IN order to protect the officials involved rather than allow a fair trial for Petitioner. This is clearly demonstrated by the record of trial in which a hearing was held on Motion in Limine "See Trial Transcript, Pgs. 67-78" outside the hearing and presence of the jury.

This Motion hearing was specifically designed to forbid Petitioner from stating on the record at trial before the jury his exact reasoning that he went to the Pike County Courthouse acting as he did. Furthermore, it completely destroyed any possibility of the jury having the complete knowledge of Petitioner taking the action that he chose to take and the intended purpose of those actions, which was only to try to get attention to the officials involved "Circuit Judge Robert Barr" and Brundidge Mayor James T. Rammage III.

Therefore, by Attorney Brantly not putting on the defense and reasoning of Petitioner's actions, as well as his intended purpose for the jury to consider deprived Petitioner of his very real, truthful defense strategy. This jury had an absolute right to know every fact of this case, that could allow them to make a determination of their belief of Petitioner's actions, regardless of whom it may expose, and Attorney Brantly had an absolute duty to put the entire evidence before them under the Sixth Amendment to

the United States Constitution, and failing to do so deprived Petitioner of effective assistance of counsel and a fair trial as a result of this unacceptable strategy.

Petitioner avers that as officers of the Court the Attorney, Prosecutor, and Judge that have knowledge of misconduct of other elected officials have a "consititutional" and "ethical duty" to report any and/or all knowledge thereof.

These officials involved in this case have not made any attempts at reporting their knowledge of the misconduct of Judge Barr, and Mayor Rammage, even though they each know it is very real. (Emphasis added).

Circuit Judge Robert Barr and James Rammage III have used their official influence influence and powers to cause interference to very attorney of which Petitioner has retained or been appointed, and ultimately prevailed not only on Attorney Brantly at trial, but the Prosecutor, and the Trial Judge in which caused Petitioner's rights to a fair trial to be violated. Attorney Brantly should have placed Petitioner's interest above the officials but did not.

This Court should acknowledge these very real facts and circumstances during its review of the Trial Record of this case and other exhibits submitted by the Petitioner in this Response.

<u>**EXAMPLE**</u>

This Court should consider that Petitioner was tried in 1989 by the Honorable Mr. McAlily as the Circuit Judge in Pike County for Distribution of a Controlled Substance under a false name, Petitioner never personally used of "Charles Myhand." "As a judge then" and "prosecutor now" Mr. McAlily was aware that "Charles Myhand" is not Petitioner's real name. However, as the trial judge in those 1988 cases Petitioner was convicted under the false name of "Myhand" Petitioner signed his own bond in that Court under his "real and only name of Charles K. Johns." See Exhibit "B."

Petitioner was unaware of the Prosecution's and Court's motive for convicting him under the false name of "Myhand" in 1989 because he had not yet exposed the long standing conspiracy of the officials involved in his property interest at that time.

Subsequently, Petitioner was convicted in 1989 as "Charles Myhand" by then Circuit Court Judge McAlily, and in 2002 as "Charles K.Johns," Petitioner's real name, by now Prosecutor "Mr. McAlily." Petitioner has never personally used the name Myhand for any reason, and disputed the Court's use of the "Myhand" name to convict him at that time. This Court should note that Petitioner's birth certificate, driver's license, and Social Security card hold only the name Petitioner has used since birth, namely "Charles Kelvin Johns." The Court, and Prosecution were very aware of the Petitioner's real name in 1989. See Exhibit "C."

Petitioner is hopeful this Court may use this prosecutorial misconduct information to illustrate the depths encompassed by the Prosecution, Courts and attorneys involved in the conspiracy of his property interest, which subsequently have spilled over into his criminal proceedings and their specific need to prosecute Petitioner imposing a life sentence upon him to continue their criminal enterprise. Because Petitioner can no longer pursue his property interests from behind the walls and gates of prison. (Emphasis added).

These officials involved have used judicial power, political power, and influence upon each and every attorney Petitioner has ever used or con-tacted concerning his criminal cases or property interest and each have intentionally fallen short of effective. Including "Debra Biggers" in the 1989 conviction, Attorney "Brantly" on direct appeal of the instant case, and Attorney "Claunch" on direct appeal of the instant case.

## INEFFECTIVE ASSISTANCE OF COUNSEL
## BY ATTORNEY'S BRANTLY AND CLAUNCH ON DIRECT APPEAL

Attorney Brantly withdrew from representation in Petitioner's case after submitting the appellate brief to the Court of Criminal Appeals, and failing to attack obvious violations of state law, U.S. Constitutional rights, and clearly established U.S. Supreme Court precedent, that were properly preserved for appeal.

Attorney Brantly withdrew citing a conflict of interest, however, this conflict was not with the Petitioner, and although Mr. Brantly may not admit to the truthful conflict and reasoning, Petitioner avers that the conflict was truly derived from Mr. Brantly's fear of retaliatory measures from the officials involved in the conspiracy over Petitioner's property interest.

Upon learning of Mr. Brantly's withdrawal from his case, Petitioner attempted to contact him by mail in several letters to him, but received no response. Petitioner's wife also attempted to contact Mr. Brantly by phone many different times immediately following his withdrawal. But Mr. Brantly refused to speak with her, and would not return her calls.

Petitioner was housed in a private prison in Mississippi at the time in which the Appellate Brief was filed, and the time Mr. Brantly withdrew from Petitioner's appeal.

Petitioner was unsatisfied with the brief, and Mr. Brantly's withdrawal and then contacted the Court of Criminal Appeals advising the Court that he was without counsel, and that there were other issues that should have been raised on appeal.

The Appellate Court contacted Petitioner by mail using in improper Alabama Inmate Serial Number (AIS) notifying Petitioner that Thomas H. Claunch was appointed to represent him on appeal. See Exhibit "D."

Petitioner immediately contacted Mr. Claunch stating that there were many other issues that should be submitted to the Court, and that he wished

for those issues to be included.

This Court should take notice that the private prison in Mississippi where Petitioner was housed by the State of Alabama Department of Corrections had absolutely no legal materials whatsoever at the time in which the filings to the Court were made. Therefore, Petitioner was unable to do the properly research to identify the errors of his trial or appellate counsel.

This Court should also take notice that this very severe prejudice was beyond Petitioner's own control, and the only legal materials that were at that institution were materials possessed by other inmates concerning their own cases and briefs. Therefore, the hardship and prejudice Petitioner received on appeal was no fault of Petitioner's. This hardship by the State of Alabama has denied Petitioner a proper appellate process beyond Petitioner's own control.

Attorney Claunch, upon receipt of Petitioner's letter dated October 23, 2003 responded back to Petitioner by mail, advising Petitioner that the issues were covered sufficiently and no other briefing was due. See Exhibit "E."

Petitioner again contacted Attorney Claunch by mail advising him that there were other issues, and he wished that Mr. Claunch submit them to the Court at that time. Petitioner's second letter to Attorney Claunch was dated November 16, 2003.

Attorney Claunch then contacted Petitioner concerning Petitioner's brief that other issues should be raised. However, Mr. Claunch advised Petitioner he would not change the brief raising any other issues. See Exhibit "F."

Petitioner submitted several other letters to Mr. Claunch in concern to the issues that should have been raised, however, Mr. Claunch never responded in regards to those letters.

Petitioner, without law materials and proper advice, had no alternative but to let the brief and issues stand as submitted. This Court should consider Petitioner's low educational skill at that time. However, Petitioner has now enrolled in Adult Basic Education (ABE), in which his starting point upon enrollment was at the very lowest and below the level of a fifth grade elementary student. Petitioner was not only very much a layman in the ways of law, but could barely read and write, and without help from other inmates at that time, could not have made any future progress at all concerning his appeal of his conviction.

Petitioner's right to effective counsel have not been set forth on appeal. The issues that Attorney Brantly preserved for appeal were many and the Trial Court made at least thirty (30)  rulings adverse to Petitioner. However, only one of those issues were raised on appeal by Attorney Brantly or Claunch, and Petitioner avers not even that issue was raised properly and thoroughly under each violation of the U.S. Constitution as submitted properly in this instant response to this Court.

Petitioner shows that these attorneys should have known to attack the obvious violations that are submitted in this petition, and response, but failed to do so.

Petitioner submitted an Application for Rehearing to the Appellate Court without any legal material but by the assistance of other inmates. However, was later returned to Alabama from where an inmate assisted in the Writ of Certiorari to the Supreme Court of Alabama. However, the Alabama Rules of Appellate Procedure do not allow for an alteration of issues from the Appellate Court to the Supreme Court. Subsequently, only the one single issue could be raised to the Supreme Court.

Therefore, this Court's taking all the circumstances, prejudice and hardship received by this Petitioner into consideration can only acknowledge

that these circumstances are of no fault of Petitioner's and rest solely
upon the State of Alabama and his appellate counsel who can only by deemed
as being ineffective on appeal.

Petitioner avers that the two-prong test cited and demonstrated in
**Strickland v. Washington**, when applied to his appellated counsel's Brantly
and Claunch's performance reveal that had either attorney raised the issues
submitted in this Petition and Response and done so properly on direct appeal,
the results of the proceedings most probably would have been different.  Then
Petitioner would only need to present those constitutional issues to this
Habeaus Court then, and could have done so long ago.

**Mickens v. Taylor**, 227 F3d 203 (4th Cir. 2000)

To establish prejudice to excuse a habeas Petitioner's procedural
default, Petitioner must show that his counsel's error worked to his actual
and substantial disadvantage, not merely that error created possibility of
prejudice.

Petitioner avers that he has made a clear and adequate showing that he
has suffered severly and substantially from the prejudice caused from the
ineffectiveness of both Attorney Brantly and Claunch on direct appeal.

**U.S. v. Espino**, 317 F3d 203 (8th Cir. 2003)

The proper method to challenge the effectiveness of counsel at trial
and on appeal is in a petition for writ of habeas corpus.

Petitioner shows that this holding need not only apply to federal
prisoners concerning the federal writ, and applicable to state prisoners
also, when the actual disadvantage is "Clear and Substantial," arriving
out of circumstances which are no fault of the Petitoners and beyond his
own control.  A federal writ of habeas corpus is the correct vehicle for
further app ellate process for a prisoner, "State of Federal."  This does
apply to this Petitioner.

However, Petitioner allowed the Trial Court an opportunity to address his claims by filing a Rule 32 Petition for post-conviction relief "without the benefit of counsel," on his own and "to the best of his ability," issues that should have been addressed on direct appeal by the Appellate Counsel, but were not.

The Trial Court dismissed Petitioner's Rule 32 Petition because the issues were precluded from being raised under Rule 32, A. R. Cr. Pr., because Petitioner assumes and as the State asserted, that a Rule 32 Petition is precluded from raising issues of facts that were known or should have been known that could have been, but were not, raised on direct appeal. See Exhibit "G," State's Response.

The Trial Court dismissed the Rule 32 Petition, and Petitioner has submitted that this ruling must have been correct. See Exhibit "H."

Therefore, if Petitioner is precluded under Rule 32 proceedings to raise issues that should have been raised on direct appeal, but were not, then Petitioner's appellate counsels were both ineffective and any future proceedings in Alabama state courts would be futile.

Assuming that the Trial Court and the State were correct for dismissing his Rule 32 Petition because the issues are precluded from those proceedings, and the Petitioner must believe, and accept that ruling as correct "then Petitioner would have no alternative than petition for the federal Writ of Habeas Corpus. The instant Habeas Corpus Petition to this Court followed.

In consideration of the foregoing, this Court should grant petition for Writ of Habeas Corpus after careful consideration of the facts submitted, the trial record, appellate record, exhibits, and then rule on the merits of Petitioner's claims, reverse this case, and/or any other remedy as justice shall so require.

## PROCEDURAL DEFAULT AND EXCEPTIONAL CIRCUMSTANCES

When a habeas Petitioner lacks a proper adequate remedy to redress his constitutional claims in State Court's of which he has been convicted, then he may seek a federal Writ of Habeas Corpus. However, those circumstances must be exceptional.

Petitioner avers that this case obtains actual truthful circumstances more exceptional than this Court may ever again encounter.

As shown in the original filings Case       Summary and Supporting Facts to this Court, as well as the arguments supporting that summary included in the grounds and issues of this Response. "(Petitioner renews the case summary and supporting facts of the original Petition without resubmitting, due to the actual extensiveness of the filings, and requests this Court consider each ground and argument of issues in support, separately and combined, due to their simularity, and support from one another)."

In consideration of the foregoing Petitioner shows this Court as follows:

Petitioner does believe that he has made an adequate showing of cause and prejudice to overcome any arguments that the State may have that Petitioner is procedurally defaulted from now raising his claims in a Habeas Petition to this Court, which is sufficiently argued under the ineffective assistance of counsel claim to establish cause and prejudice.

In substantiation of Petitioner's exceptional circumstances claims Petitioner shows this Court as follows:

The individual elected political and judicial officials named in the filings are involved in a conspiracy over Petitioner's property interest. Subsequently, this caused Petitioner to be charged, indicted, and convicted improperly in the instant case. These individuals, "Robert Barr - Circuit Judge" and "James T. Rammage III - Brundidge, Alabama Mayor" have used their very farreaching abilities to influence the proceedings and attorneys involved in Petitioner's criminal proceedings because of the conspiracy of

the property interest as well as the attorneys that were involved in
Petitioner's property interest before Petitioner was convicted on the in-
stant case.

Petitioner avers this is not a "fairy tale" but actual and that
an adequate investigation of the matter by an independent unbiased
investigator of the records of the Pike County Probate Office will reveal
that these allegations are factual.

Petitioner only discovered this conspiracy because he could not obtain
a legal description of his property that he, his brothers and sisters
simply wished to get staked of, surveyed, and split.

Petitioner could not find an attorney to do this simple, common taksk.
However, Petitioner retained the services of Julian McPhillips for a fee
of $7,500.00, who informed him that there were very severe problems with
Petitioner's property but never did fulfill the agreement of legal descrip-
tion, survey, split and probate for the $7,500.00 fee, and did not provide
a refund. Petitioner filed a complaint to the Bar Association about Mr.
McPhillips action however, no investigation was ordered, and no refund
was recommended. See Exhibit "I."

Petitioner also attempted to retain the services of other attorneys.
However, none would go forward after examining the records concerning Pet-
itioner's property. See Exhibit "J."

This Court should consider that Petitioner had not yet discovered any
discrepancies at the time, and he was attempting to simply get a legal
description of the property surveyed, and split, and probated by these
attorneys. He was only aware a problem of some sort existed because of
what Julian McPhillips, Cal Perkins, and the Probate Judge had said to him
which was to get an attorney from another state and a very good one at that.
If Petitioner could have only been able to have the property, his brothers

and sisters have inherited from their father described, surveyed, split and probated, Petitioner would have never discovered any problems with the property or committed any crime. This is not a problem Petitioner dreamed up or went looking for. In fact, he, his brothers and sisters were only attempting to exercise their rights every American has, aright that has in fact been denied up until this current date. Petitioner's brothers and sisters have confronted the same problem again recently and cannot obtain a legal description of the property or an attorney to assist them in the matter. This is also due to the influence from those involved in the conspiracy, which shows their influence as so very reaching that no attorney wishes to become involved.

Before Petitioner went to the Pike County Courthouse acting as he did, attempting to get attention, he had personally gone to the Alabama Office of the Attorney General attempting to speak with then Attorney General Bill Pryor about the matter on three (3) separate occasions, and had spoken to an Assistant Attorney General each time. Petitioner does not recall the gentleman's name, however, each time was promised an investigation into why the Pike County officials would not assist him with a simple legal description of his property. At that time Petitioner would not yet discovered the conspiracy or why he could not get any help, which is because of the individuals involved, "Robert Barr," a Circuit Judge in Pike County and the judge whom signed Petitioner's indictment in this case, also involved is James T. Rammage III, Brundidge, Alabama Mayor.

Petitioner later discovered while researching the records of his property at the Pike County Courthouse on his own, a lawsuit filed by the Attorney General against the heirs of Circuit Judge Robert Barr and Brundidge Mayor James T. Rammage III over property that they had sold that did not belong

to them.  The property and their estates were to be condemned as a result.
However, that court order was never fulfilled against H.S. Barr, James T.
Rammage 111, their heirs, and estates.  Therefore, never enforced by the
Attorney General, who "was" and "is" charged with the duty of fulfillment
of that (1960) court order.  See Exhibit "A."

Petitioner shows that criminal charges should have been filed against
those individuals then, and should be filed against their heirs now, who
are not only profitting from the property stolen from Petitioner's heirs,
but have used their public offices to influence the judicial system of
Alabama to convict Petitioner over and above the crime he actually committed
inorder to never again allow him to pursue his property interest.

Life imprisonment was imposed for a crime in which the evidence and
the record reflects only support a conviction of a Class A misdemeanor.

Petitioner also shows this state's entire governmental process seems
unwilling to recognize Petitioner for his real name and identity of Charles
K. Johns by changing his real name of Charles K. Johns to Charles Myhand,
changing his AIS number or using Charles K. Johns as an alias name to
the name of Charles Myhand.  Petitioner asserts this is intentional not an
error and is done consistently for some type of purpose by the Courts of
Alabama, the Alabama Department of Corrections and the Alabama Office of
Attorney General.  Each or the exhibits submitted by Petitioner demonstrate
the State's consistency in failure to properly address him in some type of
way, name, AIS number, or even the warden's name at the institution where
Petitioner is housed.  See Exhibit "K."

Before trial Petitioner underwent a psychological court ordered eval-
uation which Petitioner requests this Court consider the results of in two
separate applications:  See Exhibit "L."

(1)  The Psychologist who performed the evaluation recognized Petitioner's mental competency as very good.

(2)  The psychologist believed Petitioner to be truthful in his explanations and answers about his crimes and his purpose.

Petitioner avers this Court ordered evaluation shows Petitioner is a mentally competent person, and should be considered by this Court heavily.

In other words, Petitioner is not some crazy man who has just lost his mind and making crazy allegations.  In fact, Petitioner welcomes the agency or individual who would set out to prove his allegations as false, with truthful legal documentation of just where the property is located, he his brothers and sisters inherited from their heirs, back to G.C. Collier, the father of Petitioner's Great, Great, Grandmother, Henrietta Collier Johns. This is something the State of Alabama will never most probably wish to do. However, that challenge remains open to them.

Taking all the surrounding circumstances arguments in the original petition this response the facts and exhibits submitted.  This Court should heavily consider that this Petitioner has not and cannot receive an attorney to represent him properly or an unbiased judicial proceeding in this State, due to the judicial and political influence of State governmental elected officials who have a primary personal interest in Petitioner's conviction and absolute need to be sure Petitioner remains behind the gates of prison for life.

This Court should find the circumstances of this case so exceptional that would excuse any procedural default on Petitioner's behalf.

**WHEREFORE,** all premises considered, Petitioner respectfully requests this Court grant Petitioner's Writ of Habeas Corpus, review the merits of

the issues Petitioner has complained of in his filings to this Court,
reverse this case or any other remedy as justice shall require.
Respectfully submitted this 27th day of July, 2006.

I swear under penalty of perjury that the foregoing is true and correct.

*Charles K. Johns*
Charles K. Johns, Petitioner, pro se

**STATE OF ALABAMA**
**COUNTY OF BARBOUR**

Subscribed and sworn to before me this
27th day of July, 2006.

*Carolyn R. Abercrombie*
Notary Public
My Commission Expires August 18, 2007
Comm. Exp. Date

Page 37