EXHIBIT L  78



# PSYCHOLOGICAL SPECIALTIES

**Doug McKeown, Ph.D.**
Clinical and Forensic Psychology
Alabama Lic # 224
Florida Lic # 2422



## CONFIDENTIAL

## FORENSIC PSYCHOLOGICAL EVALUATION

Charles Johns                           DOB: 7/29/60
Date of Evaluation: 5/14/02             SSN: 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

**REFERRAL INFORMATION:** Charles Johns is a forty-one year old, married, black male referred from the District Court of Pike County, Alabama by the Honorable Thomas E. Head, III, Circuit Judge. The evaluation requested is for an outpatient evaluation of Competency to Stand Trial and Mental State at the Time of the Offense associated with Case Numbers CC-02-96 and CC-02-97, which are identified as Kidnapping, First Degree and Carrying a Concealed Weapon. The order for assessment is signed on the April 15, 2002.

**NOTIFICATION:** Notification of the purpose of the current assessment was provided to the Defendant indicating that in matters of Competency to Stand Trial and Mental State at the Time of the Offense that limited confidentiality existed. It was indicated that no information would be used in a self incriminating fashion. The Defendant was informed that a written report would be prepared for the Court with copies to the prosecuting attorney and defense counsel. It was further indicated that oral testimony would be provided if the Court deemed appropriate. The Defendant comprehended the notification information and agreed to participate in the evaluation and noted such by signing the notification document.

**SUMMARY OF ALLEGED OFFENSES:** The Defendant is charged on or about January 11, 2002, with the offenses of Kidnapping, First Degree and Carrying a Concealed Weapon. It was noted that the Defendant reportedly had a knife and went to the probate office in the courthouse in Pike County and after he arrived, he put his arm around the neck of Peggy Scott, who is a security guard and held a revolver in his right hand. It was noted he went into the probate office and after a police officer and the sheriff arrived that the suspect was talked into putting the gun down. The Defendant was relieved of a 32 revolver and was cuffed and taken into custody.

**DATA SOURCES:** The information for assistance in completing the current evaluation includes information obtained from a social history, mental status examination and interview with the client. In addition the utilization of the Competency to Stand Trial Assessment Instrument is completed. Information is available from defense counsel, Thomas K. Brantley, which includes the completion of the information sheet from defense counsel. Additional information is received from the office of the District Attorney, which includes copies of the report of investigation, the incident report, the arrest report and a listing of the Defendant's prior convictions.

---

**CONSULTATION ▪ EVALUATION ▪ INTERVENTION**
114 E. Troy St. / Post Office Box 6216 / Dothan, Alabama 36303
Phone (334) 671-5577 / Telecopier (334) 673-7247

EXHIBIT "L"

Charles Johns
Page 2

**CLINICAL ASSESSMENT:** The Defendant, Charles Johns, is charged with counts of Kidnapping and Carrying a Concealed Weapon associated with an incident in the Pike County Courthouse occurring on January 11, 2002.

The Defendant reports he was born in Brundidge. He was raised predominantly by his mother and father. The mother who is now deceased died last year at the age of sixty-five. The father died in 1984 at the age of 69. He reports also in the household during his childhood was his grandfather and grandmother in addition to a number of siblings. He reports altogether there were twelve children. There are five sisters and six brothers and six of the siblings are older. The Defendant went to the tenth grade at Pike County High School. He reports he is currently married and has been for sixteen years. He has a sixteen year old son from another relationship and a fourteen year old son from the current marriage, in addition to, a sixteen year old daughter from the marriage. His wife is forty-one years old and employed with the Russell Corporation. He reports he has never been in the military. He reports he has worked all of his life primarily in the area of landscaping, concrete work and building swimming pools. He reports that he is currently working with a brother building swimming pools and has been employed in this particular capacity for the past two weeks. He has a long history of working for McClendon Pools where he worked for eleven years. For a period of time he was also self employed doing landscaping and concrete type work. He reports he has a drivers license, which he has had since he was sixteen except for a period of time when he lost it after he did not pay some tickets apparently associated with a speeding ticket and driving with suspended license ticket. He does report he had a DUI when he was eighteen years old but did not lose his license at that time. He indicates his hobbies and past times include shooting pool, doing yardwork and watching programs on television particularly on the Discovery channel and the learning channel. He indicates he has used alcohol in the past but very infrequently in the past six or seven years. He reports he pretty much quit alcohol altogether in 1984 because he could not handle the headaches the morning after. He has used marijuana on an infrequent basis but not anytime recently. He denies any active medical problems other than a belief he may have an abdominal hernia and also occasionally he has muscle spasms in his back. He is on no medication at this particular point in time. He has no past history of surgical intervention.

His past legal history indicates in 1991 he went to prison and spent twenty-three months for possession of a controlled substance. He reports no other legal complications or difficulties. He indicates he has never been involved in any specific psychiatric treatment nor has he been seen by a psychologist. He indicates while he was in prison he did talk with a counselor on one or two occasions.

He does occasionally smoke cigarettes.

Clinical data indicates an adequately developed and nourished, pleasant, forty-one year old gentleman who appears his stated age. He is attired in black jeans and an open collar shirt. His grooming and personal hygiene are quite good. He does have a tattoo of a cross on his upper



Charles Johns
Page 3

right arm. His general attitude and demeanor suggest full cooperation. He is poised and interacts in an appropriate fashion. There is no indication or impairment noted of memory function for recent or remote events. He is fully oriented to time, person, place and situation. Concentration and attention are evaluated and he is able to repeat five digits forward and reverse four digits without difficulty. His fund of information is quite good. He is cognizant of the current and former President as well as the Governor and local Mayor. He is aware that Brazil is a country in South America and is fully aware of basic facts about his environment. His abstract reasoning indicates he is able to identify the similarities between an apple and a banana, a dog and a lion and a boat and a car with good abstracting ability. For judgement and insight, he reports if he were lost in the forest in the daytime he would follow the sun to try to find a way out. He indicates if he were in a movie theater and a fire broke he would report it to authorities and get out. Intellectual abilities are estimated to be in the low average range.

Speech productivity is normal with normal flow and an appropriate tone. He is fully coherent. There is no impairment of thought content. He provides information in a logical fashion and sequence with some tendency towards providing excessive details. Productivity is normal. There is no past instance of suicidal ideation or attempts and he denies hallucinations and delusions.

Motor activity is normal. He makes appropriate eye contact. There is no inappropriate mannerisms or gesturing. Appropriate facial expressions are noted and he does become tearful on one occasion talking about some of his past stresses. His quality of mood is felt to be normal with a consistent and constant range of affect and appropriate affective control.

All in all, no indications of psychological dysfunction or impairment of cognitive abilities are specifically noted.

**COMPETENCY TO STAND TRIAL:** The Competency to Stand Trial Assessment Instrument is completed with the Defendant. The assessment instrument is designed to measure individuals knowledge of the courtroom situation as well as participants in a judicial proceeding. Additionally, information is obtained related to an individuals understanding of court procedure, process and assessment of the ability to relate to an attorney.

The Defendant is fully aware of the charges against him and the potential penalties but is not sure exactly what the potential outcome would be from an actual court proceeding but he is cognizant that he could be sentenced to a long time in jail. He is able to define the role of individuals in a judicial proceeding indicating the defense counsel is the individual who defends him and the prosecuting attorney presents the evidence to the court to try to convict him. He understands the judge presides over the case and the jury makes decisions over guilt and innocence. He recognizes he is the Defendant and witnesses testify about what a person may have done.

Charles Johns
Page 4

His knowledge of court procedure is quite good and he is able to indicate that individuals are to be on their best behavior in court. He provides information suggesting he is quite cognizant about facts related to the charges and appears fully capable of providing that information to defense counsel. There is no indication that he would have difficulty relating to defense counsel and he would be capable of realistically challenging prosecution witnesses. He is cognizant of legal strategy including the understanding of a plea bargain. There is no suggestion of a potential for unmanageable behavior and he appears fully capable of testifying in a relevant fashion. All in all, the Defendant provides satisfactory responses suggesting he is fully capable of assuming the role of a Defendant in a judicial proceeding.

**MENTAL STATE AT THE TIME OF THE OFFENSE:** On or about January 14, 2002, the Defendant is reported to have taken a gun and possession of a security guard at the Pike County Courthouse into the probate office. It is reported he was making threatening gestures and he was charged with Kidnapping and Carrying a Concealed Weapon.

The Defendant provides a very long and detailed explanation of events that led up to the current situation associated with the charges. He indicates he was the oldest of six brothers and sisters that had inherited some land. He indicates in the year 2000 they decided to try to split up the land which he indicates was possibly as much as 750 acres. He reports he went down to the courthouse in Troy during that year to get information on the deed to the land but they refused to give him that information. He talked to some lawyers in Montgomery and they were to do a title search and after he paid them to do this, he never got a response. Then he went to see some black attorneys in Selma, Alabama who were going to follow up on the case but again he reports he never got any definitive answers. After that, he saw a lawyer in Pensacola who again told him that something could be done and they would get back with him in a few days. After a few weeks, he became frustrated and went to see a lawyer in Georgia with the Federal Land Association. Then, he saw Ralph Cook, who he reports use to be a judge in Montgomery. He was then referred to a federal judge in Birmingham. Then, he went to see the Jere Beasley Law Firm and another attorney, Julian McPhillips about trying to get some resolution to his case. He indicates he had over the period of over a year tried to get some assistance in finding out what his family legally had entitlement to and what could be done so the land could be split up to pay for a number of family related expenses at the time. He indicates nobody had been listening to him or providing him any information. He reports on the day of the alleged events he went to the courthouse and had in his possession a 32 revolver. He reports he called the security guard, Peggy Scott over and put his arm around her and walked into the probate office. He indicates he was trying to get some attention with no intention of harm or threat to anyone, only that, perhaps under these conditions someone would provide him some assistance, some cooperation and some answers to the questions he had. He reports when the sheriff arrived at the scene, he put the gun down and indicated he had no intention of bringing harm to anyone.

All in all, Mr. Johns provides a very lengthy and detailed explanation of what led up to the events, activities and behaviors associated with the alleged offenses. He demonstrated and

Charles Johns
Page 5

indicated he was under a lot of stress and extremely frustrated by the situation but that he was cognizant of his actions, behaviors and the events that transpired on or about the time of the alleged offenses. There was no indication of any substance use involved and no indication of any other aberrations of thought. All in all, while he was quite frustrated with the situation, the current presentation, explanation and assessment would indicate he was capable of making appropriate decisions at the time of the alleged offense if he so chose. No indication of an inability to conform his behavior due to cognitive dysfunction was specifically noted.

**SUMMARY, CONCLUSIONS AND RECOMMENDATIONS:** Charles Johns is a forty-one year old, married, black male charged with Kidnapping and Carrying a Concealed Weapon. He is assessed for Competency to Stand Trial and Mental State at the Time of the Offense for these charges. Assessment at this time indicates a gentleman that is fully cognizant of the legal process and judicial proceedings and demonstrates a capability of assuming the role of a Defendant in a judicial proceeding.

With regard to Mental State at the Time of the Offense, he does report significant factors over a long period of time that led to a significant level of frustration and stress, however, his description of events, circumstances and behaviors indicated a knowledge and comprehension of his actions such that there was not an indication of a cognitive dysfunction that prevented him from making appropriate decisions at that time.

Information provided to the Circuit Court for opinions regarding Competency and Mental State are provided in an advisory capacity. This examiner understands the decisions regarding these matters are to be determined by the Circuit Court. Any additional testimony or information necessary will be provided to the Court as deemed appropriate.

Doug McKeown, Ph.D.
Licensed Clinical Psychologist
Certified Forensic Examiner