IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES KELVIN JOHNS,                )
AIS #154434,                         )
                                     )
              Petitioner,            )
                                     )
       v.                            )        CASE NO. 2:06-CV-229-WHA
                                     )              [WO]
                                     )
J. C. GILES, et al.,                 )
                                     )
              Respondents.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for writ of habeas

corpus filed by Charles Kelvin Johns ["Johns"], a state inmate, on March 8, 2006.  In this

petition, Johns challenges a conviction for second degree kidnapping imposed upon him

by the Circuit Court of Pike County, Alabama on March 13, 2003.[1]  The trial court

---

[1]In March of 2002, a Pike County Grand Jury indicted Johns for first degree kidnapping in violation of *Ala. Code* § 13A-6-43(a)(2) for the abduction of Peggy Scott, a court security officer, with the intent to use Scott as a shield or hostage. *Respondents' Exhibit F - Court Doc. No. 8-6* at 33.  However, after hearing the evidence, a duly empaneled jury convicted Johns of the lesser included offense of kidnapping in the second degree.  Under the applicable code section "[a] person commits the crime of kidnapping in the second degree if he **abducts** another person." *Ala. Code* § 13A-6-44(a) (emphasis added).  As relevant to this case, the term "abduct" is defined as follows:  "To restrain a person with intent to prevent his liberation by ... [u]sing or threatening to use deadly physical force." *Ala. Code* § 13A-6-40(2)(b).  In accordance with well established law, the State may establish kidnapping in the second degree by "'show[ing] that the accused prevented the liberation of the victim ... by the use of deadly ... physical force....'" *Henderson v. State*, 612 So.2d 1256, 1261 (Ala.Cr.App. 1992), quoting *Newton v. State*, 540 So.2d 800, 801 (Ala.Cr.App. 1988).  Although a defendant may present a defense that "the abduction [was] not coupled with intent to use [deadly force] or [a] threat[] to use deadly force," *Ala. Code* § 13A-6-44(b)(1), it is clear beyond cavil that utilization of a firearm to procure the abduction of another person constitutes the use of deadly physical force and the abductor's intent with respect to the use deadly physical force can be inferred by the jury from the use of such force and/or other relevant circumstances. *Jones v. State*,

sentenced Johns as an habitual felony offender to life imprisonment for this conviction.

Johns filed a direct appeal of his kidnapping conviction in which he argued that the State failed to provide the defense notice of a post-arrest oral statement made by Johns to the Sheriff of Pike County regarding Johns' intent to kill someone on the day of the abduction. Specifically, Johns complained that this omission by the State violated Rule 16.1 of the Alabama Rules of Criminal Procedure and deprived him of a fair trial in violation of the Due Process Clause of the United States Constitution. *Respondents' Exhibit G (Johns' Brief on Direct Appeal) - Court Doc. No. 8-7* at 19.[2] On March 19, 2004,

---

591 So.2d 569, 574 (Ala.Cr.App. 1991) ("'[T]he element of intent, being a state of mind or mental purpose, is usually incapable of [direct] proof, [and] it may be inferred from ... the use of a deadly weapon and other attendant circumstances.' *Johnson v. State*, 390 So.2d 1160, 1167 (Ala.Cr.App.), *cert. denied*, 390 So.2d 1168 (Ala. 1980)."); *Bishop v. State*, 482 So.2d 1322, 1326 (Ala.Cr.App. 1985) (intent presumed from use of deadly weapon); *Seaton v. State*, 645 So.2d 341, 343 (Ala.Cr.App.1994), quoting *McCord v. State*, 501 So.2d 520, 528-529 (Ala.Cr.App.1986) ("'Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified by witnesses and the circumstances as developed by the evidence.'"). "'The intent of a defendant at the time of the offense is a jury question.'" *C. G. v. State*, 841 So.2d 281, 291 (Ala.Cr.App.2001), *aff'd*, 841 So.2d 292 (Ala.2002), quoting *Downing v. State*, 620 So.2d 983, 985 (Ala.Cr.App.1993). Intent or lack thereof must be determined by the jury and a finding of requisite intent "'may be inferred from the facts and circumstances attending the whole transaction.'" *Owens v. State*, 531 So.2d 2, 13 (Ala.Cr.App. 1986), quoting *Doss v. State,* 23 Ala.App. 168, 180, 123 So. 237, 248 (1929).

[2]In his appellate brief, Johns specifically stated "he does not make an argument under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). The statements attributed to Mr. Johns by Sheriff Thomas were not material or relevant to the elements of the crime charged. The statements were, however, very unfavorable to Mr. Johns [as they undercut his defense] that he ... was acting out of character and under duress of weighty issues ... [and refuted his prior testimony] that he only wanted attention. His entire Defense was aimed at mitigating the effects of his actions. The introduction of his purported statements by Sheriff Thomas, were severely prejudicial if in no other facet than in the sentencing portion of the trial." *Respondents' Exhibit G (Johns' Brief on Direct Appeal) - Court Doc. No. 8-7* at 25-26. Appellate counsel's concession that Johns' intent to cause harm does not constitute an element of the first degree kidnapping charge contained in the indictment is correct, as the requisite intent for such charge requires that the abduction occur only with the intent to use the abducted individual as a shield or hostage. Moreover, the accused's intent to cause physical harm is likewise not an element of second degree kidnapping, as this offense occurs upon abduction with either the use of deadly physical force or with a threat of such force. *Henderson*, 612 So.2d 1261. Moreover, the lack of intent to use deadly force or threaten the use of deadly force only presents a potential defense to second degree kidnapping. At trial, Johns testified he abducted a court security officer and used a firearm in the commission of this abduction. The alleged lack of intent to cause harm to the victim or anyone else by actually firing the weapon on the day of the abduction is irrelevant, as Johns admitted

2

the Alabama Court of Criminal Appeals affirmed Johns' kidnapping conviction in an

unpublished memorandum opinion issued on rehearing. *Respondents' Exhibit B - Court*

*Doc. No. 8-2*. The appellate court's opinion, in relevant part, reads as follows:

> The facts adduced at trial indicate the following: On January 14, 2002, Johns, apparently disgruntled over the probate office's treatment of his real property, entered the Pike County Courthouse armed with a gun. [Johns identifies the weapon as a .32 caliber revolver.] As he approached the metal detector, [Johns] jumped through it and grabbed Security Officer Peggy Scott around the neck. Johns pointed the gun at [Scott's] head and pulled her toward the office of the Probate Judge. Officer Scott was unarmed. Pike County Probate Judge Bill Stone heard shouting and stepped out of his office to investigate. He saw Johns holding Officer Scott at gunpoint. Judge Stone tried to convince Johns to drop the gun. Deputy Sheriff Douglas Wheeler then appeared on the scene and convinced Johns to drop the gun. Johns was placed in handcuffs and taken into custody by Sheriff Russell Thomas. Johns was taken to the Sheriff's office where he and the Sheriff talked.
>
> Johns's defense at trial centered around his assertions that he was "stressed out" and that he was very sorry the episode had occurred.
>
> On appeal, Johns argues that the State failed to abide by Rule 16.1, Ala. R. Crim. P., when it did not provide to defense counsel the substance of Johns's oral statement made to the Sheriff after his arrest. This failure, Johns contends, substantially prejudiced his defense and deprived him of a fair trial.
>
> At trial, Johns testified that he had not intended to hurt anyone when he went down to the courthouse on the day in question. [Upon hearing this testimony, the prosecutor dispatched one of his employees to speak with the Sheriff. Thus, the prosecutor at this time learned that Johns advised the Sheriff he had gone to the courthouse that day to kill someone.] On cross-examination, over defense counsel's objection regarding the fact that Johns's alleged statement had never been provided to defense counsel, the prosecutor questioned Johns about whether he had stated to the Sheriff ... he "came to kill somebody today." Johns denied making the statement. The State recalled the Sheriff to the stand for rebuttal testimony. The Sheriff testified

---

use of deadly force to commit the offense. As previously noted, the intent to use deadly force can be inferred from the undisputed fact that Johns used a deadly weapon to commit the abduction.

that Johns stated that he "came [to the courthouse] to kill somebody" on the day in question.

> Rule 16.1 states:
>
> > "Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court ... [or within such time] as may be ordered by the court....
> >
> > "... Disclose the substance of any oral statements made by the defendant, before or after arrest, to any law enforcement officer, official, or employee which the state ... intends to offer in evidence at the trial."

Assuming, without deciding, that the prosecutor erred by failing to turn over to defense counsel the substance of Johns's statement to the Sheriff, this error was harmless.  Johns was indicted [for first degree kidnapping] for abducting Officer Scott "with the intent to use her as a shield or hostage...."  See § [1]3A-6-43(a)(2).  Johns was ultimately convicted of  second-degree kidnapping, which required proof only that he abducted Officer Scott.  Johns admitted during his testimony that he was armed [with a deadly weapon] and that he "grabbed" Officer Scott and "carr[ied] her all the way into the probate judge's office."  Officer Scott testified that she was in fear for her life as Johns removed her from her seat, restrained her at gunpoint, and forced her to go to the probate judge's office.  Other credible eyewitnesses, including the probate judge, confirmed Officer Scotts' testimony that she was restrained by Johns with his weapon and that she was forced to walk with him to the probate judge's office.  Johns's testimony alone, but in particular combined with the testimony of Officer Scott and the other eyewitnesses, proved the State's prima facie case that [Johns] abducted Officer Scott.  Even without the statement that Johns had gone to the courthouse in question to kill somebody, "the evidence overwhelmingly proved [Johns's] guilt...."  Ex parte Hilburn, 779 So. 2d 626, 631 (Ala. 2000).  "No judgment shall be reversed or annulled, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless  in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."  Rule 45, Ala. R. App.  Because of the existence of overwhelming evidence supporting the conviction for second-degree kidnapping, and because the statement did not serve to establish an element of the crime for which Johns

had been indicted, the admission of the statement did not probably injuriously affect his substantial rights. [Although Johns argues the statement of his intent affected the trial court in sentencing him to the maximum sentence for a Class B felony with five prior felony convictions, the court denied any reliance on the statement of intent and, instead, stated its sentencing of Johns to the maximum constituted an effort to set an example and preserve the sanctity of the courthouse.]

For the reasons stated above, the judgment of the trial court is affirmed.

*Respondents' Exhibit B - Court Doc. No. 8-2* at 2-4.  Johns filed a petition for writ of certiorari in which he again challenged the State's failure to provide him notice of the substance of the oral statement made to the Sheriff as violating state procedural law and the Due Process Clause of the United States Constitution.  *Respondents' Exhibit H - Court Doc. No. 16-2* at 5, 11.  The Alabama Supreme Court denied certiorari on May 14, 2004.  *Respondents' Exhibit D - Court Doc. No. 8-4 -- Ex parte Johns*, 916 So.2d 638 (Ala. 2004).

In May of 2005, Johns filed a *pro se* state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Pike County, Alabama in which he alleged that:  (1) the Constitution of the United States and/or the State of Alabama required a new trial, new sentencing or other relief from conviction because counsel failed to provide effective assistance at trial and on direct appeal;[3] (2) the trial court lacked jurisdiction to render judgment or impose sentence as the grand jury improperly

---

[3]Thomas K. Brantley represented Johns at trial and filed the initial brief on direct appeal.  Johns states that Brantley withdrew after submitting this brief and the appellate court appointed Thomas H. Claunch to represent Johns.  The record demonstrates that Johns acted *pro se* in filing both an application for rehearing with the Alabama Court of Criminal Appeals and a petition for writ of certiorari with the Alabama Supreme Court.

issued an indictment for first degree kidnapping when, based on all the evidence presented at trial, it should have issued the indictment for second degree kidnapping; (3) the indictment is based on perjured testimony and government misconduct for the sole purpose of denying a jury instruction on those lesser included offenses relevant to second degree kidnapping; (4) the sentence exceeds the maximum authorized by law; and (5) the conviction for second degree kidnapping violates the Due Process Clause of the Constitution.  In support of his claims of ineffective assistance, Johns argues that trial and appellate counsel, Thomas K. Brantley, (i) failed to challenge the validity of the indictment issued for first degree kidnapping, (ii) did not disclose the conspiratorial efforts of judicial officers and a city official regarding the theft of property from petitioner's ancestors as an explanation for petitioner's actions, (iii) failed to challenge the sufficiency of the arrest warrant and supporting affidavit, (iv) allowed continuance of the preliminary hearing which resulted in issuance of an indictment prior to such hearing, (v) did not conduct an adequate investigation as he failed to make any attempt to locate several witnesses present at the courthouse on the day of the incident, and (vi) denied petitioner a meaningful direct appeal by raising only one issue.  *Respondents' Exhibit F (Rule 32 Petition of Charles K. Johns) - Court Doc. No. 8-6* at 8-17.

On December 15, 2005, the trial court entered an order denying Johns' Rule 32 petition.  In this order, the court deemed the substantive claims raised in the post-conviction petition "precluded under the operative provisions of said rule" and determined "that the

6

allegation of ineffective assistance of counsel [was] without merit." *Respondents' Exhibit F - Cour Doc. No. 8-6* at 4. Johns did not appeal this order.

Johns initiated this 28 U.S.C. § 2254 action on March 8, 2006, in which he asserts the following claims for relief:

1.  The trial court acted in violation of the United States Constitution when it erroneously admitted into evidence a statement allegedly made by petitioner to the Sheriff of Pike County because (i) the prosecutor failed to disclose the statement to the defense prior to trial in violation of state procedural law, federal due process and *Brady v. Maryland*, 373 U.S. 83 (1963), (ii) petitioner never made any such statement, i.e., the Sheriff fabricated the statement, (iii) law enforcement elicited the statement without advising petitioner of his constitutional right to an attorney and his right to remain silent as required by *Miranda v. Arizona*, 384 U.S. 466 (1966), and (iv) the trial court failed to instruct the jury the statement could only be used to determine petitioner's credibility at trial.

2.  Petitioner was unconstitutionally indicted for a crime which state law prohibits a conviction under the circumstances presented by the defense at trial. Specifically, the indictment for first degree kidnapping could only have been obtained under false pretenses, fictitious testimony, misreading of the statute or prosecutorial misconduct as eyewitnesses testified petitioner released the victim alive, in a safe place, without serious physical injury after confrontation with law enforcement but prior to actual physical apprehension of petitioner which release constitutes a defense to first degree

kidnapping under *Ala. Code* § 13A-6-43(b).

3.  The trial court erred by placing the case before the jury on the charge of first degree kidnapping after petitioner satisfied elements of the statutory defense regarding release in a safe place without serious physical injury and prior to actual physical apprehension of petitioner, i.e., arrest or placement in custody, as the trial court improperly deemed the question of whether petitioner released the victim prior to apprehension a question for the jury.

4.  Petitioner was not guilty of second degree kidnapping and his actions constituted only unlawful imprisonment, reckless endangerment or menacing.

5.  The evidence fails to support a conviction for second degree kidnapping as petitioner presented a defense to the charge showing he did not intend to use or threaten to use deadly force. "The evidence in this case was clearly an abduction, and Petitioner gave testimony at trial that he was the abductor. However, ... no witness testified that a threat of deadly force was made or evidence that Petitioner intended to cause any type of harm to the abductee or anyone on or around the scene." *Petition for Habeas Corpus Relief - Court Doc. No. 1* at 21. The only direct testimony regarding an intent to cause harm was the alleged fictitious statement that the Sheriff claimed petitioner made to him.

6.  The trial court erred by refusing to instruct the jury on lesser included offenses associated with kidnapping in the second degree, i.e., unlawful imprisonment in the first degree, reckless endangerment and menacing.

8

7.  The trial court was without jurisdiction to render judgment or impose sentence (i) because the indictment for first degree kidnapping is defective, and (ii) due to the court's failure to instruct the jury on the lesser included offenses associated with kidnapping in the second degree as the jury would have convicted petitioner on one of these lesser included offenses, all misdemeanors, thereby resulting in a sentence of only one year.

8.  Thomas K. Brantley provided ineffective assistance at trial and on direct appeal when he (i) failed to attack the validity of the indictment, (ii) did not challenge the sufficiency of the evidence, (iii) prevented petitioner from giving a full of account of why he undertook the actions against Ms. Scott, (iv) failed to challenge the trial court's failure to instruct the jury on the lesser included offenses associated with second degree kidnapping, (v) did not challenge the jurisdiction of the trial court, and (vi) failed to present *Miranda* and *Brady* challenges to the statement petitioner made to the Sheriff.

9.  Thomas H. Claunch provided ineffective assistance on direct appeal when he refused to amend the brief submitted by Brantley.

10. Any purported procedural default arising during trial or on direct appeal is due to ineffective assistance of trial and appellate counsel. *Petitioners' Response - Court Doc. No. 2* at 32.

*Petition for Writ of Habeas Corpus - Court Doc. No. 1* at 9-25; *Petitioner's Response - Court Doc. No. 25* at 1-32.

In their answers to the petition, the respondents argue that the claims pending before

this court entitle Johns to no relief. Specifically, the respondents contend that all of Johns' claims for federal habeas relief, with the exception of the claim regarding admission of his statement to the Sheriff as presented on direct appeal, are procedurally barred from review because Johns failed to present these claims to the state courts in accordance with the State's procedural rules either at trial, on direct appeal or on appeal from the trial court's order denying the Rule 32 petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-1733 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990). It is likewise clear that the evidentiary submission claim, to the extent it is the same claim as the one raised on direct appeal, does not entitle Johns to federal habeas relief as

the state courts properly adjudicated this claim on the merits. *Price v. Vincent*, 538 U.S.

634, 123 S.Ct. 1848, 1852 (2003); *Williams v. Taylor*,529 U.S. 362, 120 S.Ct. 1495 (2000).

In addition to the foregoing arguments, the respondents likewise argue that Johns' claims

based on alleged violations of state law – i.e., the statement to Sheriff Thomas was

admitted in violation of state procedural rules, the indictment fails to state a crime under

state law, and the trial court failed to instruct the jury on lesser included offenses as

permitted by state law – present issues of state law which provide no basis for federal

habeas relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Beverly v. Jones*, 854 F.2d 412 (11th

Cir. 1988).   With respect to Johns' claim that he did not commit the crime of second

degree kidnapping, the respondents construe this claim as an assertion of actual innocence

in an effort by Johns to establish a fundamental miscarriage of justice and thereby excuse

the procedural defaults applicable to the vast majority of claims raised in the instant

petition.  The respondents maintain that Johns has failed to meet the requisite burden of

proof on his fundamental miscarriage of justice claim as he has presented no new, reliable

evidence not available to him at the time of trial demonstrating his factual innocence, and

instead relies on the same evidence and arguments presented in his defense at trial. *Bousley

v. United States*, 523 U.S. 614, 623-624 (1998); *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Upon review of the § 2254 petition, the answers of the respondents, Johns' responses

to the answers, the state court record, opinions issued by the state courts and applicable

federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules*

*Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

Throughout the pleadings filed in this case, Johns presents arguments asserting his actual innocence of second degree kidnapping.  Johns bases these arguments on testimony he provided at trial which indicated that he did not intend to cause harm to anyone during his abduction of the court security officer, nor did he verbally threaten the use of deadly force during the abduction.  The law is well settled "that '[c]laims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'  *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since the trial.  'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.'  *Id*."  *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002).  In accordance with the foregoing, Johns is entitled to no relief from this court on any independent claim of actual innocence.

### B.  Admission of Petitioner's Statement to Sheriff Thomas - Alleged Violation of State Procedural Rules and the Due Process Clause of the United States Constitution

Johns complains the trial court erred when it admitted a statement attributed to him by Sheriff Thomas regarding Johns' intent on the day of the abduction. Johns asserts that the admission of this statement violated Rule 16.1, *Alabama Rules of Criminal Procedure*, and deprived him of due process as secured by the Fifth Amendment of the United States Constitution.

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518. Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of

materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'  *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)."  *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521."  *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an ***unreasonable*** application of federal law is different from an

*incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the Johns of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851.

Johns presented his challenges to the admission of his statement on direct appeal. The Alabama Court of Criminal Appeals determined that his claims provided no basis for relief. *Respondents' Exhibit B - Court Doc. No. 8-6.* The state court did not decide Johns' challenges to the admission of his statement "differently than [the Supreme] Court has [in

a case based] on a set a of materially indistinguishable facts" nor did the state courts apply

a rule that contradicts governing federal law.  *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523.

Consequently, the state appellate court's rejection of the challenges to the statement was

not contrary to actual Supreme Court decisions.   Further, a thorough review of the

evidentiary materials submitted in this case establishes that the state court's rejection of

Johns' arguments was objectively reasonable and likewise constituted a reasonable

determination of the facts in light of the evidence presented by the parties.  Thus, Johns is

not entitled to relief from this court on his challenges to the trial court's admission of his

statement as violating a state procedural rule and his federal constitutional right to due

process.[4]

## C.  Procedurally Defaulted Claims

The remaining claims presented by Johns in his petition for habeas corpus relief are

procedurally defaulted as Johns failed to present these claims to the state courts in

accordance with the State's applicable procedural rules.  *O'Sullivan v. Boerckel*, *supra*.;

---

[4]To the extent Johns argues the state appellate court erred in finding no violation of a state procedural rule, the claim arises solely under the purview of state law and, therefore, likewise fails to provide a basis for federal habeas relief as such action does not implicate the Constitution.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (a federal court has no authority to re-examine state court determinations on questions of state law and, therefore, "federal habeas corpus relief does not lie for errors of state law.");  *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988);  *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A state court's interpretation of its own laws and rules are not grounds for relief in a federal habeas proceeding.");  *Walton v. Attorney General for the State of Alabama*, 986 F.2d 472, 475 (11th Cir. 1993) (federal court is bound by decision of state court that no state law has been violated);  *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992 ("[A] state court's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.");  *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-1055 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes....   A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

*Henderson*, 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt v. Jones*, 348 F.3d at 1358-1359. Upon thorough review of the answers filed by the respondents and the state court records submitted by the parties, the court finds the relevant procedural defaults as follows:

(a) The claims challenging admission of petitioner's statement to Sheriff Thomas as fictitious, absent proper instruction to the jury, and in violation of *Miranda* and *Brady*, all claims attacking the validity of the indictment, the allegations of trial court error with respect to submission of the case to the jury and provision of jury instructions, petitioner's denial of guilt, the claims regarding lesser included offenses, the challenge to the sufficiency of the evidence, and the claim attacking the jurisdiction of the trial court are procedurally defaulted because Johns did not present these claims during trial and/or on direct appeal of his conviction.  With respect to these defaults, the last state court to render judgment on such issues determined that Johns procedurally defaulted these claims under applicable state rules.  *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").  Specifically, upon review of Johns' Rule 32 petition, the Circuit Court of Pike County, Alabama deemed the claims precluded under the relevant provisions of Rule 32.2(a).  *Respondents' Exhibit F - Court Doc. No. 8-6* at 4. Additionally, these claims are procedurally barred from review as Johns failed to appeal

the trial court's denial of his Rule 32 petition.

(b)   The claims of ineffective assistance of trial and appellate counsel are procedurally defaulted either because Johns failed to raise the specific claim of ineffective assistance in his Rule 32 petition or he raised the claim in the Rule 32 petition but did not file an appeal from the trial court's denial of his post-conviction petition.

This court may reach the merits of Johns' procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)].... Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray*, 477 U.S. at 495-96, 106 S.Ct. at 2678.   A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id*."  *Henderson*, 353 F.3d at 892.

1.  **Cause and Prejudice**.

"To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.  In an attempt to meet this burden, Johns complains that he received ineffective assistance of counsel at trial and on direct appeal.  Johns also alleges that his *pro se* and lack of legal knowledge should excuse any defaults arising from his failure to present his claims properly during the Rule 32 proceedings.

As previously determined, Johns procedurally defaulted his claims of ineffective assistance of trial and appellate counsel, as he failed to pursue these claims properly in the state courts in available state proceedings.  Ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently and properly raised in the state courts.  *Murray*, 477 U.S. at 489 ("a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim).  Thus, such claims cannot constitute cause necessary to excuse Johns' procedural defaults.  Moreover, the court finds that none of the allegations of ineffective assistance of trial and appellate counsel in any way justify Johns' failure to exhaust the procedurally defaulted claims during the Rule 32 proceedings.

Johns' reliance on his *pro se* status and lack of legal knowledge as cause likewise provide no basis for relief from the applicable procedural bars, as neither an inmate's lack of legal knowledge, his failure to understand legal principles, or his inability to recognize

potential claims for relief at an earlier juncture constitute an extraordinary circumstance sufficient to warrant such relief. *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990) (ignorance of the law fails to establish cause for a procedural default); *Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989); *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *Barksdale v. Lane*, 957 F.2d 379, 385-386 (7th Cir. 1992) (petitioner's *pro se* status does not constitute adequate grounds for cause); *see also Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law is not a factor which warrants relief from procedural bars); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.' *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)."); *Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000), *cert. denied*, 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001) (lack of legal knowledge or legal resources, even in a case involving a *pro se* inmate, does not warrant equitable relief from a procedural bar); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (equitable relief from procedural bar not justified by fact that petitioner did not understand the law).

The record is devoid of any "objective factor external to the defense that prevented [Johns] from raising the claim[s] and which cannot be fairly attributable to his own conduct." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In light of the fact that Johns raised his claims for federal relief while proceeding *pro se* in both this court and the state

courts, it is clear that such claims are not issues "intrinsically beyond [a] *pro se* petitioner's ability to present." *Harmon*, 894 F.2d at 1275.

Based on the foregoing, the court concludes that Johns has failed to demonstrate cause for his failure to present his federal habeas claims to the state courts in compliance with applicable procedural rules.   Furthermore, Johns has presented nothing which establishes the existence of actual prejudice emanating from infringement of federal law. Nevertheless, this court may still reach the merits of Johns' procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

**2.  <u>Fundamental Miscarriage of Justice</u>**.  Throughout his pleadings in this court, Johns argues he is not guilty of second degree kidnapping and maintains that this court should therefore address his procedurally defaulted claims based on the exceptional circumstances of his case in order to avoid a fundamental miscarriage of justice.  The basis for this claim is Johns' assertion that he did not intend to cause physical harm to anyone during his abduction of the victim.  Specifically, Johns maintains he did not intend to fire the weapon, nor did he ever threaten the use of deadly force during his actions at the courthouse.  Johns, however, concedes that he abducted the victim while armed with a deadly weapon and acknowledges use of the weapon against the victim to accomplish the abduction.[5]

---

[5]As previously noted, *infra*. at n.1, Johns' intent at the time of the abduction is a jury question and may be inferred from the totality of the facts and circumstances which occurred during his commission of the offense.

The miscarriage of justice standard is directly linked to actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Actual innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo, supra.* "To establish actual innocence, [a habeas petitioner] must demonstrate that … 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "[T]he *Schlup* standard is demanding and permits review only in the '"extraordinary"' case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." 547 U.S. at 537, 126 S.Ct. at 2077. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare…. To be credible, such a claim requires petitioner to support his

allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  513 U.S. at 324 (emphasis added).

The instant claim of innocence is based on the same defense and evidence presented by Johns at trial.  The jury rejected this argument and found Johns guilty of second degree kidnapping.  Johns has failed to make the requisite showing of actual innocence, as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*.  Johns' procedurally defaulted claims are therefore foreclosed from federal habeas review.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Charles Kelvin Johns be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before December 9, 2008 the parties may file objections to the Recommendation.   Objections must specifically identify the findings in the Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.)

DONE, this 26th day of November, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE